THE CITY OF CHICAGO, Defendant in Error, *vs.* M. & M. HOTEL COMPANY, Plaintiff in Error.

*Opinion filed December 21, 1910—Rehearing denied Feb. 9, 1911.*

1. MUNICIPAL CORPORATIONS—*city can only exercise such powers as are expressly delegated or necessarily implied.* A city can exercise only such powers as are expressly delegated to it by the legislature and such as are necessarily implied from those expressly given.

2. SAME—*delegation of powers of sovereignty to municipal corporation does not divest State of such powers.* The taxing power, police power and the power of eminent domain are sovereign powers belonging to the State, and while the legislature may delegate these powers to a municipal corporation, such delegation does not divest the State of the sovereign right to exercise them for itself or take them from the municipal corporation.

3. SAME—*clause 66 of section 1 of article 5 of Cities and Villages act, concerning police power, construed.* Clause 66 of section 1 of article 5 of the Cities and Villages act, providing that cities may "pass and enforce all necessary police ordinances," is not a general delegation of all the police power of the State, but is intended only to give cities and villages power to pass and enforce such police ordinances as are necessary in reference to the subjects and occupations the regulation of which is expressly delegated to cities and villages by the specific clauses of such section.

4. SAME—*statutes granting powers to municipal corporations are to be strictly construed.* Statutes granting powers to municipal corporations are to be strictly construed, and any fair and reasonable doubt as to the existence of such powers is resolved against the municipal corporation claiming to exercise them.

5. Same—*the doctrine of ejusdem generis applies especially to statutes granting powers to municipal corporations.* While the doctrine of *ejusdem generis* should not be invoked to nullify or destroy the meaning of general terms or provisions, yet it is particularly applicable to statutes requiring strict construction, such as those granting powers to municipal corporations.

6. Same—*extent of city's police power.* The specific mention in the various clauses of section 1 of article 5 of the Cities and Villages act of the enumerated subjects with reference to which a city may exercise the police power is the exclusion of all others.

7. Same—*a city has no power to pass ordinance to license and regulate hotels.* While the hotel business has an aspect of public interest which might warrant the legislature in passing a law to license and regulate such business or to delegate to cities and villages the power to pass ordinances for that purpose, yet such power has not been exercised, and an ordinance for that purpose passed by a city is without authority and void.

Carter, J., dissenting.

Writ of Error to the Municipal Court of Chicago; the Hon. John C. Scovel, Judge, presiding.

Kraus, Alschuler & Holden, (Thomas J. Lawless, of counsel,) for plaintiff in error.

George H. White, (Henry M. Seligman, of counsel,) for defendant in error.

Mr. Chief Justice Vickers delivered the opinion of the court:

The city of Chicago brought an action against the M. & M. Hotel Company, a corporation, in the municipal court of Chicago, to recover a penalty for carrying on and engaging in the business of conducting a hotel, known as the Lexington Hotel, at Twenty-second street and Michigan avenue, without having first obtained a license so to do, contrary to an ordinance passed by the city council January 7, 1907. The hotel company admitted, upon a hearing, that before the beginning of the suit it had been engaged

in conducting such hotel business without having a license so to do. The municipal court adjudged the hotel company guilty and assessed a fine of $10 and costs against it. The trial judge having made a proper certificate, a writ of error has been sued out from this court to review the judgment below.

The sole question to be determined is whether the ordinance under which the fine was assessed is valid. That ordinance is, in substance, as follows:

Section 1 defines a hotel as "any hotel, inn, rooming house, lodging house or other public house or place which provides lodging for hire, either with or without board, for the transient accommodation of the public."

Section 2 provides that no person shall keep, conduct or maintain a hotel unless he be licensed so to do in accordance with provisions of the ordinance, and that every day in which a hotel is kept, conducted or maintained without such license shall be a separate violation.

Section 3 provides that the mayor shall grant a license to any person of good character who shall apply to him in writing therefor, and who shall not be indebted to the city of Chicago on account of any unpaid fine adjudged against him for the violation of any provision of any ordinance of the city of Chicago relating to the keeping or conducting of a hotel; that the application shall specifically describe the premises, and the number of lodging rooms for guests, in which it is proposed to conduct such hotel; provides that no license shall be issued to any one other than the proprietor, except in case of a corporation, in which case the license may be issued either to the corporation or to any one designated by such corporation as manager; that where a corporation is proprietor the application shall be signed by its president or secretary and shall truly state the names and addresses of all its officers and directors, and that a license to a firm shall be issued in the names of the individual members of the firm; provides that every appli-

cant shall execute to the city a bond, with at least two sureties to be approved by the city collector, in the sum of $500, conditioned that the applicant will faithfully observe and conform to all ordinances in force at the time of his application or thereafter passed during the period of the license applied for, concerning or in any manner relating to the conduct or management of hotels, and will promptly pay all fines which may be adjudged against him for the violation of any provision of any such ordinance during the period of his license; that no application for license shall be considered until the bond shall have been filed and approved.

Section 4 provides that any person complying with the aforesaid requirements, and upon the payment, in advance, to the city collector of a license fee of $15, shall receive a license authorizing the person or persons named to keep a hotel at the place and of the number of rooms designated in the license and for the period stated therein; that licenses may be issued for the full license year or any unexpired portion thereof, the fee to be paid for a portion of a year to bear the same ratio to the sum required for the whole year that the number of days in such unexpired portion bears to the whole number of days in the year, and that no license shall extend beyond the 30th day of April next following its issuance.

Section 5 reads: "Every hotel licensed under this ordinance shall at all times keep a book or register wherein shall be entered and registered, at the time and in the proper order, the name of every person becoming a guest of such hotel or an occupant of any room or portion of the premises, except employees of the hotel. Such register shall at all times be open to the inspection of the mayor, the chief of police and the police officers of the city of Chicago and their assistants."

Section 6 reads: "No person keeping or conducting a hotel shall permit the same to be or become a resort of dis-

reputable persons, nor knowingly permit or suffer the same
to be used or occupied by persons for immoral purposes."

Section 7 provides that any person violating any pro-
vision of the ordinance shall be fined in a sum not less than
$10 nor more than $200 for such offense; that if any per-
son has been once convicted for violating any provision of
the ordinance, the mayor may, in his discretion, revoke the
license of such person, if he has one, in addition to the
other penalties provided by the ordinance, and for a second
conviction the mayor shall revoke his license, and no license
shall thereafter be issued to such person until the expira-
tion of two years after the date of judgment of the sec-
ond conviction.

Section 8 reads: "This ordinance shall not be so con-
strued as to include boarding houses or places where board
or lodging alone are furnished exclusively by the week or
longer period."

The validity of this ordinance is assailed by plaintiff in
error on several grounds, the most important of which,
and the only one which we need to consider, is the want
of power in the city to pass the ordinance. Defendant in
error concedes that there is no express power given it to
license hotels or hotel keepers, since the business of hotel
keeping is not enumerated among the occupations which
may be licensed or regulated under the express provisions
of the City and Village act. The city contends, however,
that under its general police power it had the right to pass
the ordinance in question, and concedes that if the power
to pass the ordinance in question does not exist under the
police power it does not exist at all and the ordinance is
therefore void.

The city of Chicago is organized under the statute
known as the City and Village act. It may exercise only
such powers as are expressly delegated to it by the legisla-
ture and such as are necessarily implied from those ex-
pressly given. All governmental powers primarily reside in

the people.  Some of these powers have been delegated to the Federal government by the constitution of the United States.  All of the powers not thus delegated are reserved to the people of the several States and are exercised by the people through their representatives in the legislature and the other departments of the State government.  The constitution of the State does not confer power upon the legislature to act, but it is a limitation upon its powers.  The State legislature has inherent power to pass any law that it sees fit, unless it contravenes some provision of the State or Federal constitution.  The legislature may delegate all or a part of its power to municipalities created by the legislature.  Among the essential powers of government are the taxing power, the police power and the power of eminent domain.  These powers belong to the State.  They are essential to the existence of government.  The State cannot divest itself of these powers and retain its sovereignty.  Stripped of these great powers the State would become subordinate to the municipality or corporate entity in which such powers were vested.  The mere delegation of any of these powers does not divest the State of its sovereign right to exercise them for itself or to take them away from municipalities at its pleasure.  Counties, townships, school districts, cities, villages and other municipal and *quasi* municipal corporations are created under the authority of the legislature, to better accomplish the purposes of local government.  These, and all other local municipalities which are authorized by the legislature, derive their existence and all their powers from the legislature of the State creating them.  There is therefore no such thing as an inherent power in any municipality which is created by legislative enactment.

The police power of the State is difficult to define.  All of the authorities agree that the constitution supposes the pre-existence of the police power, and its construction must

be with reference to that fact. (*Village of Carthage* v. *Frederick,* 122 N. Y. 268.) In *Commonwealth* v. *Alger,* 7 Cush. 53, in speaking of the police power, Shaw, C. J., said: "It is much easier to perceive and realize the existence and source of this power than to mark its boundaries or prescribe limits to its exercise." In a general way the police power is exercised to promote the health, comfort, safety and general welfare of society. The police power may be delegated by the legislature to cities and villages. (Smith on Mun. Corp. sec. 1321.) An examination of the ninety-seven clauses of paragraph 62 of the act providing for the incorporation of cities and villages will show that the legislature has delegated to cities and villages police powers over a large number of subjects, among which may be mentioned the following: Wharfboats, tugs, etc., by clause 35; hawkers, peddlers, pawnbrokers, keepers of ordinaries, theatricals, shows, etc., by clause 41; hackmen, draymen, cabmen, expressmen, etc., by clause 42; runners, by clause 43; billiards, etc., by clause 44; liquor selling, by clause 46; sale of meats, fish, butter, etc., by clause 50; and by other clauses the sale of bread, vegetables, cotton, tobacco and flour may be regulated, and under still other clauses such occupations as auctioneers, distillers, keepers of second-hand and junk stores and slaughter houses, and the use of streets by wagons and vehicles, may be regulated, but nowhere in the said section is there any express power given to cities to regulate the occupation of keeping hotels. Clause 66 of paragraph 62 is general and reads as follows: "To regulate the police of the city or village and pass and enforce all necessary police ordinances."

Defendant in error contends that the ordinance in question is a proper police regulation and that the power to pass it is delegated to the city by the general language in clause 66. To this we cannot yield our assent. If by clause 66 the legislature intended to delegate to cities and

villages the entire police power of the State, the special
clauses above referred to granting police power over cer-
tain enumerated subjects and occupations are wholly un-
necessary.   Where all, or nearly all, of the ordinary police
powers are made the subjects of express grants, only such
additional ones can be exercised under a general grant of
police power as are absolutely essential to the welfare of
the community.   (Smith on Mun. Corp. sec. 1320; Horr
& Bemis on Mun. Police Ordinances, sec. 211.) . The spe-
cific mention in the various clauses of paragraph 62 of cer-
tain enumerated subjects with reference to which the city
may exercise the police power, is, under a well known canon
of construction, the exclusion of all other subjects.   *City
of Cairo* v. *Bross,* 101 Ill. 475;   *Thomas* v. *West Jersey
Railroad Co.* 101 U. S. 82.

Clause 66, which purports to delegate general police
power to cities, must be construed in connection with other
clauses of paragraph 62 which specifically enumerate the
various subjects in reference to which the police control is
given.   Thus construed, the general language of clause 66,
to "pass and enforce all necessary police ordinances," means
that this power can only be exercised in reference to such
subjects and occupations as are enumerated in other specific
clauses of the section.   In other words, clause 66 is in-
tended to give cities and villages the power to "pass and
enforce all police ordinances" which may be necessary in
reference to the subjects and occupations the regulation and
control of which are by other specific clauses expressly dele-
gated to such municipalities.   That clause is not a general
delegation of all the police power of the State, which, if
given to them, would authorize cities and villages to pass
and enforce all police ordinances upon any and all subjects,
without regard to any other specific delegation of power.
If such comprehensive meaning be given to this general
grant of power, then a city council, within its territorial ju-
risdiction, is co-ordinate with the State legislature so far

as the enactment and enforcement of general police regulations are concerned. Again, if the construction contended for be sound law, the question of the power of a city to pass any police regulation could not arise in reference to any ordinance of that character, and yet this court has frequently declared such ordinances void for want of power in the municipality to pass them. We are not unmindful of the rule that a statute should be so construed as to give every part its appropriate force and meaning, and that the maxim *ejusdem generis* cannot be invoked to nullify or destroy the meaning of general terms or provisions. *Misch v. Russell,* 136 Ill. 22.

The construction which we have placed upon clause 66 does not leave it without force and meaning. It serves the purpose of removing any doubts that might otherwise arise as to the extent of the implied powers granted respecting the specific things enumerated. Statutes granting powers to municipal corporations are strictly construed, and any fair and reasonable doubt as to the existence of the power is resolved against the municipality claiming the right to exercise it. (*Seeger* v. *Mueller,* 133 Ill. 86.) The maxim *ejusdem generis* is especially applicable to all statutes requiring a strict construction. (*In re Swigert,* 119 Ill. 83.) We think that this construction is supported by *City of Chicago* v. *Collins,* 175 Ill. 445, and *Harder's Storage Co.* v. *City of Chicago,* 235 id. 58, which are known as the "wheel tax cases." In the *Collins case* this court had under consideration the validity of an ordinance providing that all vehicles used upon the streets of the city, including those for private use and pleasure, should pay an annual license fee and obtain a tag showing the payment of such license fee, and providing for a fine of not less than $10 nor more than $50 for using any wheeled vehicle propelled by horse power or by the rider, without having a license so to do. This ordinance was held void by this court because there was no express power granted to license and regulate the

use of vehicles upon the streets, notwithstanding the general language of clause 66 was then in the statute as it is now. After the decision in the *Collins case,* the legislature, in 1907, amended the law, and specifically authorized cities and villages "to direct, license and control all wagons and other vehicles conveying loads within the city," etc. After the statute was amended the city passed another ordinance somewhat similar to the one that was held invalid in the *Collins case.* This last ordinance came before this court in the *Harder's Storage Co. case* and was held valid, and the *Collins case* was distinguished on the ground that the statute had been changed so as to confer the power since the *Collins case* was decided.

Defendant in error contends that the hotel business is impressed with a public interest and for that reason it is subject to control and regulation under the police power. The case of *Munn* v. *People,* 94 U. S. 113, is relied on as establishing this contention. In that case, on page 125, Mr. Chief Justice Waite, speaking for the majority, said: "This brings us to inquire as to the principles upon which this power of regulation rests, in order that we may determine what is within and what without its operative effect. Looking, then, to the common law, from whence came the right which the constitution protects, we find that when private property is 'affected with a public interest it ceases to be *juris privati* only. * * * Property does become clothed with a public interest when used in a manner to make it of public consequence and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use, but so long as he maintains the use he must submit to the control.' "

248—18

It may be conceded that the business of inn-keeper is not strictly *juris privati* and that it has an aspect of public interest which would warrant the legislature in passing an act for the regulation of such business, or we may with safety go one step farther and concede that this power exists in the legislature and that it may be either exercised by it directly or delegated to municipalities, but the answer to this contention is, that the power to license and regulate hotels has not been exercised by the legislature directly nor has it authorized its exercise by cities and villages. What was said in the *Munn case* was with reference to the licensing and regulation of public grain elevators under a statute passed by the legislature, but it is not an authority supporting the position of defendant in error that the general police power of the State may be exercised by municipalities without express and specific legislative authority. If the ordinance in question was an act of the legislature, or if it had been passed by the city council in pursuance of express authority from the legislature, then the doctrine of the *Munn case* and other authorities relied upon by the defendant in error would be in point.

There are other objections urged by plaintiff in error to the ordinance in question, but in view of the conclusion we have reached in respect to the power of the city to pass the ordinance it is not necessary to consider any other question.

We are of the opinion that the ordinance under which plaintiff in error was convicted is void in its entirety for want of power in the city to pass it.

The judgment of the municipal court of Chicago will be reversed.                    *Judgment reversed.*

Mr. JUSTICE CARTER, dissenting.