Argued April 11, reversed and remanded May 13, 1919.

# McINTOSH *v.* SCHOPS.

### (180 Pac. 593.)

**Innkeepers—Distinction from "Lodging-house Keeper"—"Boarding-house Keeper."**

1. At common law, an "innkeeper" catered to the traveling public, the transient travelers who in passing through the country stopped from day to day in the pursuit of their travels, while the "lodging-house or boarding-house keeper" took care of more permanent customers, who remained for longer periods, more or less permanently.

**Innkeepers—Liability to Guests.**

2. An innkeeper though held to a very high degree of care for goods of his guests, does not incur such strict liability except to one who sustains the relation of a "guest," and he may be an innkeeper to some persons, "guests" as such, and only a lodging-house keeper as to others.

**Innkeepers—Liability for Goods of Lodger—Pleading and Proof of Negligence.**

3. The duty of an innkeeper toward the goods of a relatively permanent lodger or boarder being that of ordinary care only, and being the same duty owed by the ordinary bailee for hire and no more, there is no presumption of his negligence in case of theft or burglary.

**Pleading—Admission in Answer—Effect.**

4. Where the complaint of plaintiff suing a lodging-house keeper for loss of goods alleged that at all times mentioned defendant was the keeper of a common inn or hotel, which was admitted in the answer, it may be accepted as established that defendant was keeping such a place.

**Innkeepers—Status as "Lodger" Rather Than "Guest."**

5. Where plaintiff's occupancy of a room in defendant's hotel was of a permanent nature at a fixed rental per week or month, and extended from January 16th to April 4th, and from April 18th to March 18th, *prima facie*, in the absence of evidence to the contrary, plaintiff was a "lodger," or boarder, of a lodging-house keeper, rather than a "guest" of an innkeeper in the strict sense.

[As distinction between guest and boarder at hotel or inn, see note in Ann. Cas. 1914B, 729.]

From Multnomah: William N. Gatens, Judge.

Department 2.

The defendant was the keeper of an inn or hotel in Portland. The plaintiff was an occupant of one of the

rooms in the hotel. While plaintiff was out of his room one day, the door was forced open by a burglar, and three suits of clothes and some small articles of property were taken. He brings. this action against the defendant to recover the value of such wearing apparel, etc., alleged to amount to about $84.

REVERSED WITH DIRECTIONS.

For appellant there was a brief over the names of *Mr. Frank S. Grant, Mr. James N. Davis* and *Mr. W. W. Dugan, Jr.,* with an oral argument by *Mr. Grant.*

For respondent there was a brief over the names of *Mr. Alfred P. Dodson* and *Mr. F. J. Litchtenberger,* with an oral argument by *Mr. Dodson.*

BENNETT, J.—The case seems to have been tried upon both sides, upon the theory that the relationship of guest and innkeeper subsisted between plaintiff and defendant, and that the defendant's liability was of that very high degree, amounting almost to insurance, which attached at the common law to such relationship.

We are forced to the conclusion that from the allegations in the pleadings and the proof in the case, this was not the real relationship between the parties, but that the real relationship was that of a boarding or lodging house keeper to his boarder or lodger—an altogether different relationship, calling for a different degree of care, and a much less strict rule of liability for the goods in question.

1. It is not claimed by the plaintiff that there is any statutory liability—indeed, his claim is that the statute has not affected the common-law rule. The distinction at common law between an innkeeper and a board-

ing or lodging house keeper, was that the innkeeper catered to the traveling public—the transient traveler, who, in passing through the country, stopped from day to day in the pursuit of his travels. The lodging-house or boarding-house keeper, on the other hand, took care of more permanent customers, who remained for longer periods and more or less permanently in the same place.

2. The innkeeper has always been held to a very high degree of responsibility, and if the property of his guest was stolen while under his roof, even without his fault, he was generally liable therefor. But it seems well established, that before he incurred this strict liability, it must appear, not only that he was an innkeeper or hotel-keeper, but also that the party he was entertaining should sustain the relationship of *"guest."* The same innkeeper, who sustained that relationship to such as were "guests," might be only a lodging or boarding house keeper as to other persons who were staying with him permanently, and were not therefore "guests" within the technical meaning of the word.

The distinction and the reasons for it, as traced by Mr. Beale in the early chapters of his work on Innkeepers, is very interesting, and grew out of the disturbed and dangerous conditions of the traveling in England, in the early centuries, when the common law was growing up. The presence of the great numbers of outlaws and highwaymen, made it necessary that the traveler, passing through the country, by the crude methods of travel then in vogue, should find wayside stopping places, where he and his property could be protected from thieves and robbers; and out of this necessity and the danger of possible collusion between the innkeeper and the outlaw, grew the rule, holding

the innkeeper absolutely liable to such traveler for the loss of goods while at the inn.

The necessity of such a strict rule seems never to have existed or been recognized in the case of more permanent boarders—probably because in the case of a permanent lodger or boarder, he had a better opportunity to choose his own place of living, and he could also know in advance, just exactly what care and means of protection his landlord was adopting. This ancient distinction seems always to have been preserved in the law and still exists at this day.

In 22 Cyc. 1077, subdivision G, it is said:

"An innkeeper may, and commonly does, entertain not only merely transient guests, but other persons who stay at the inn for a considerable period, making in fact their residence there; such persons are boarders, not guests. If he (a person), is staying at the inn under a contract, by which he is to remain there a certain considerable time, and in return gets a special rate for board, he is presumably a boarder."

In Dobie on Bailments and Carriers, 249, Section 91, it is said:

"It is as important to determine who are guests as it is to decide who are innkeepers; for, as the exceptional liabilities, which will be subsequently discussed, are imposed only on those who are strictly innkeepers, so these liabilities exist solely in favor of those whose legal relation is that of guests, and not in favor of boarders, or other persons resorting to the inn. He alone, then, can hold the innkeeper to his rigorous liability who is technically a guest. That the plaintiff is not a guest is therefore always a defense to the strict liability as an innkeeper for loss or damage to the goods.

"It is clear that the definition of 'guest' involves three elements, which require separate treatment in the order named: First, a transient; second, patronizing the inn as such; third, consent of the innkeeper."

In Beale on Innkeepers and Hotels, Section 201, it is said:

"A boarder at an inn is not entitled to the exceptional responsibility of the innkeeper for the goods of his guest. So where money is deposited in the office safe and is stolen by a clerk who was not negligently employed, and where goods are stolen from the chamber of the guest, the innkeeper is not responsible."

And again:

"A passenger or wayfaring man may be an entire stranger. He must put up and lodge at the inn to which his day's journey may bring him. It is therefore important that he should be protected by the most stringent rules of law, enforcing the liability of the innkeeper. In such case, therefore, the law makes the innkeeper an insurer of the goods of his guest except as to losses occasioned by the act of God or public enemies. But as a boarder he does not need such protection, the law does not afford it. It is sufficient to give him a remedy when he shall prove the innkeeper has been guilty of culpable negligence."

And again, in Section 202, Id., it is said:

"He does not receive the boarder as part of his public duty and therefore does not undertake the extreme responsibility undertaken toward the guest's goods; but he receives the boarder and his goods to be entertained and cared for, with the single exception that he does not offer his house to a boarder as a refuge from the perils of the road. For any injury to the goods, which an innkeeper carrying on his business in the ordinary way should have guarded against, the innkeeper ought to be liable. This is usually expressed, in the language ordinarily used in connection with bailments, as that duty of 'ordinary care' which is due in bailments for the mutual benefit."

3. So the duty of an innkeeper toward the goods of such a lodger or boarder, being that of ordinary care only, and being the same duty owed by the ordinary

bailee for hire and no more, there is no presumption of negligence in case of theft or burglary, and the plaintiff must plead and prove actual negligence.

The case of *Claflin* v. *Meyer*, 75 N. Y. 260 (31 Am. Rep. 467), involved the liability of such a bailee for hire in the event of burglary, and the court said:

"But where the refusal to deliver is explained by the fact appearing that the goods have been lost, either destroyed by fire or stolen by thieves, and the bailee is therefore unable to deliver them, there is no *prima facie* evidence of his want of care, and the court will not assume in the absence of proof on the point that such fire or theft was the result of his negligence."

And again:

"This burden is never shifted from him. If he proves the demand upon the warehouseman and his refusal to deliver, these facts unexplained are treated by the courts as *prima facie* evidence of negligence; but if, either in the course of his proof or that of the defendant, it appears that the goods have been lost by theft, the evidence must show that the loss arose from the negligence of the warehouseman.

"Applying these principles to the present case, we must hold that when it appeared, as it did, that the goods were taken from the defendant's warehouse by a burglarious entry thereof, the plaintiffs should have shown that some negligence or want of care, such as a prudent man would take under similar circumstances of his own property, caused or permitted or contributed to cause or permit that burglary."

The same conclusion was reached by the Supreme Court of Washington in the case of *Colburn* v. *Washington State Art Assn.*, 80 Wash. 662 (141 Pac. 1153, L. R. A. 1915A, 594), where the goods in question were left in charge of a museum company for exhibition. The court said:

"Having in mind these rules touching the burden of proof and the fact that we have practically no evidence

save that of witness Hall above quoted, showing the amount of diligence or want of diligence exercised by appellant in caring for respondent's goods, and the conceded fact that they were lost by theft, it seems to us that there is such want of affirmative showing of negligence on the part of appellant that it must be held free from liability such as is here sought to be charged against it.''

Mr. Van Zile in his work on Bailments and Carriers, cites the New York case, among many others, with approval, and says:

''If he proves the demand upon the warehouseman, and his refusal to deliver, these facts unexplained are treated by the courts as *prima facie* evidence of negligence; but if, either in the course of his proof or that of the defendant, it appears that the goods have been lost by theft, the evidence must show that the loss arose from the negligence of the warehouseman.''

And in 6 Corpus Juris, Section 61, page 1123, it is said:

''So a bailee is not liable for losses resulting without his negligence from such public disasters as the inroads of a hostile army, or the confiscation or destruction of goods by military authority, or from such private causes as robbery, burglary, or theft.''

4. In this case the complaint alleges ''that at all times hereinafter mentioned, the defendant was the keeper of a common inn or hotel,'' and this, we think, is admitted in the answer. So it may be accepted as established, that the defendant was keeping such a place.

It is also alleged ''that the plaintiff was a guest of the defendant,'' but this is denied in the answer. The defendant alleges that:

''Defendant has been and still is engaged in keeping the Standish Hotel, renting rooms to transients and to *permanent roomers,* and plaintiff engaged room 36 on January 16, 1915, and occupied the same, and

paid rental therefor *at the rate of $2.50 per week,* to April 4, 1915, and afterward on April 18, 1915, plaintiff engaged a room in said hotel and paid rental therefor to March 18, 1917, at the rate of $12 per month."

And this is admitted in the reply.

5. So it appears that plaintiff's occupancy was of a permanent nature, at a fixed rental per week or month, and, therefore, *prima facie* (and in the absence of evidence to the contrary, he was a lodger or boarder rather than a guest). There seems to have been no evidence offered whatever on the part of the plaintiff in regard to this feature of the case.

Under these conditions we must hold that plaintiff was *prima facie* at least, not a guest of the hotel, but a more or less permanent roomer or lodger, and that the relationship of innkeeper and guest, and the resulting liability, did not exist as to him.

We cannot find any affirmative evidence whatever of neglect on the part of the defendant, and we conclude that the finding of actual negligence on his part is not sustained by evidence. Indeed, the court seems to have based its findings entirely on the presumption against an innkeeper, which, as we have seen, did not apply in this case.

The motion of the defendant for a nonsuit should have been allowed. The judgment of the court below will be reversed and the cause remanded with instructions to enter a nonsuit.

REVERSED WITH DIRECTIONS.

McBRIDE, C. J., and BEAN and JOHNS, JJ., concur.