(No. 30457.

AMBASSADOR EAST, INC., *et al.*, Appellants, *vs.* THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed January 22, 1948—Rehearing denied March 15, 1948.*

SCOTT, MACLEISH & FALK, of Chicago, (CRANSTON SPRAY, ROBERT S. CUSHMAN, and ARLINDO S. CATE, of counsel,) for appellants.

BENJAMIN S. ADAMOWSKI, Corporation Counsel, (L. LOUIS KARTON, MAURICE J. NATHANSON, and AL F. GORMAN, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE SIMPSON delivered the opinion of the court:

Appellants, six hotels in the city of Chicago, seek to enjoin the city from enforcing its hotel rent control ordinance. The circuit court of Cook County dismissed their complaint for want of equity. The validity of a municipal ordinance being involved and the trial judge having certified that in his opinion the public interest requires an appeal to the Supreme Court, the case is brought here for review.

The ordinance in question declares and finds in substance that a serious public emergency exists in the housing of a considerable number of persons in the city of Chicago

which has produced an acute shortage in dwellings; that living quarters in Chicago hotels have been and are in large proportions occupied by residents of the city; that with the termination of Federal rent control there is an immediate danger of exorbitant and unreasonable increases in rents for hotel housing accommodations, which will result in further overcrowding of other quarters to the detriment of the public health, public safety and general welfare; that control of such rents by the city is necessary in order to prevent exactions of unjust, unreasonable and oppressive rents.

The ordinance defined hotel housing accommodations as including "all hotel rooms which are not under federal or state control and which, on June 30, 1947, were rented on a weekly or monthly basis or on a daily basis to a tenant or tenants who for a period of 90 days or more had been continuously a tenant or tenants in the same hotel." It fixes a maximum rental for the controlled accommodations of 15 per cent above the maximum rental which was established under the authority of the Federal Emergency Price Control Act of 1942, as amended and in effect with respect thereto on June 30, 1947, and provides for a commission to effectuate the purposes of the ordinance and to establish such maximum rents above or below the 15 per cent for hotel housing accommodations in the city as in its judgment will be fair and equitable, and gives it the power to regulate or prohibit speculative or manipulative practices or renting or leasing practices, including those relating to recovery of the possession, in connection with hotel housing accommodations which in its judgment are equivalent to or are likely to result in rent increases inconsistent with the purposes of the ordinance. For the violation of any regulation, order or requirement, a penalty is provided by fine or imprisonment in the House of Correction, or both. The ordinance is to remain in effect until June 30, 1949.

The appellants take the position that the city was without power to enact the ordinance and that the same is therefore void. The city contends that it has such power by reason of the Rent Control Act· enacted by the 65th General Assembly and also by virtue of its health and police powers. The legislative act upon which the city relies (Ill. Rev. Stat. 1947, chap. 80, pars. 48-61,) was approved July 18, 1947, and provides as to when it shall be in force, "This Act shall be in force in any community which adopts it by ordinance or resolution of the corporate authorities thereof."

By the passage of its ordinance, the city says the act was adopted. Appellants contend the city did not thereby adopt the act because of the variance between the ordinance and the statute and because the ordinance does not say expressly or in substance that the city is adopting the act. By reason of our holding herein, it will not be necessary to decide that point.

The act declared that a public emergency exists in the housing of a considerable number of persons in the State and that because Federal control of rents would cease on June 30, 1947, a need existed in a number of areas throughout the State for the control of rents to protect the public health, safety and general welfare. It provided that rent control could be enforced against certain housing accommodations. Section 2 of the act defines the meaning of terms used therein. The term "housing accommodation" is defined as being "Any building or structure, permanent or temporary, or any part thereof, occupied or intended to be occupied by one or more individuals as a residence, home, sleeping place, boarding house or lodging house, together with the land and buildings appurtenant thereto, and all services, privileges, furnishings, furniture and facilities supplied in connection with the occupation thereof, but does not include a hospital, convent, monastery, asylum, public institution, or college or school dormitory or hotel

or building or structure on land (outside any city, village, or incorporated town) used primarily in connection with agricultural pursuits."

The city argues that the word "hotel" as used in said section 2 of the act should be construed to mean and to cover only such portions of the hotel housing accommodations as are rented to transients and that it should not be construed to cover any portion rented on a weekly, monthly or daily basis as provided in the ordinance. The appellants contend that the word "hotel" was used as meaning all of the hotel housing accommodations including those rented to transients and others as well.

We are therefore called upon to determine the legislative intent by the use of the word "hotel" and to construe the act in accordance with that intention. While the bill was being considered and before its enactment a Senate committee was appointed to investigate the need for hotel rent regulation. On June 16, 1947, that committee reported and, in part, said, "1. That the hotels, innkeepers, etc., generally, have not fixed rental prices of rooms to the transient trade and others, at an exorbitantly high rate, but in most instances, where the rental prices have been increased, the increase has been reasonable and commensurate with the increased cost of doing businss. 2. After making a thorough investigation of hotel costs, rates and other matters incidental and related to the question, for the purpose of determining a fair cost rate for such service, and further, to determine the need for legislative action in the regulation thereof, this Committee finds that in the vast majority of instances, the hotel industry has determined a fair cost rate for such services in line with the present economic conditions. This Committee further concludes that legislative action in the regulation of hotels, inns, apartment hotels, etc., is not necessary at this time."

An amendment was offered in the Senate to House Bill No. 278 which would in effect have differentiated be-

tween a residential hotel and a transient or commercial hotel and would have made the former subject to rent control but would have excluded the latter therefrom. The amendment, however, was not adopted. The fact that the Senate had the committee's report before it as a guide, and that it refused to adopt the amendment, is strong evidence of its intention that the word "hotel" was to include all of the housing accommodations within the hotel structure, and not only those rented to transients. *Peoples Gas Light and Coke Co.* v. *Ames,* 359 Ill. 152.

The word "hotel" has been defined in Illinois and many other States by statute and by court decision. The definitions vary to such degree that it is difficult to find a proper technical meaning that could be used in an unlimited sense. Our own statute, in the Innkeepers Act, (Ill. Rev. Stat. 1947, chap. 71, par. 4c,) defines the word "hotel" as applied to that act as a place where lodging, or lodging and food, or apartments, or suites or other accommodations are offered for adequate pay to travelers and guests, whether transients, permanent or residential, etc. Under the Dram Shop Act, (Ill. Rev. Stat. 1947, chap. 43, par. 95(18),) the word "hotel" is defined to be a place where food is actually served and consumed and sleeping accommodations are offered for adequate pay to travelers and guests, whether transient, permanent or residential, etc. After considering the great number of definitions of the word "hotel," we come to the conclusion that the plain, usual and ordinary acceptation of the word as used in the act before us is the best guide to its meaning. As a general rule, words of a statute are to be taken in their ordinary and popular sense, unless it plainly appears from the context, or otherwise, that they were used in a different sense. *Maiss* v. *Metropolitan Amusement Ass'n,* 241 Ill. 177; *Potson* v. *City of Chicago,* 304 Ill. 222; *Anderson* v. *Board of Education,* 390 Ill. 412; *Bradley Supply Co.* v. *Ames,* 359 Ill. 162.

The Federal act had decontrolled housing accommodations "in any establishment which is commonly known as a hotel in the community in which it is located." Had our legislature intended the word "hotel" to mean anything other than an establishment commonly called by that name, or had it intended the act to cover only such part of the establishment as was rented to transients, it certainly would have been specific in that regard. It is reasonable to assume that the legislature intended to base its coverage and exclusion upon the nature of the establishment rather than upon the relation of the occupant to the owner or the proprietor thereof. Whether the relation be that of inkeeper-guest or landlord-tenant or whether the subject be transient or nontransient is a question of fact to be determined in each individual case and it would be difficult and burdensome for the commission to decide that matter in determining whether the law applied or did not apply. Where two constructions of a law are proposed, this court will avoid the one which produces absurd results and renders the law difficult of operation. (*People* v. *Day*, 321 Ill. 552; *Patterson Pure Food Pie Co.* v. *Industrial Com.* 335 Ill. 476; *People ex rel. Auburn Coal and Material Co.* v. *Hughes*, 357 Ill. 524.) It seems clear to us that the legislature intended the word "hotel" used in the exclusion provision of said section 2 to mean all of the establishment commonly known as a hotel in the community in which it is located and not only that part thereof rented to transients. It follows that the city had no authority by virtue of the Rent Control Act for the adoption of its ordinance.

Aside from the Rent Control Act the city claims authority for the passage of this ordinance by virtue of its health and police powers. Cities in this State have no inherent powers but only such as are delegated to them by law and such as are necessarily incident to those granted, and a delegation of power will be strictly construed. (*City*

*of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264; *Arnold* v. *City of Chicago,* 387 Ill. 532.) The power given cities with reference to promotion of health is found in section 23-81 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1947, chap. 24, par. 23-81,) and gives the city power to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease. The city's police power is given by the same statute under section 23-105 and empowers the city to pass and enforce all necessary police ordinances. The city says that under these powers it can prevent increases in rents and that its ordinance was proper, saying, "The logical result of these increases must be to force out of such accommodations those who cannot afford to pay increased rents. Every person forced to vacate a dwelling in a hotel must seek another dwelling. He, in turn, forces out of a dwelling another person not so well situated financially. A vicious circle is set up which results in overcrowding or ousting of tenants until at the bottom of the pyramid persons are forced out onto the streets or into already desperately overcrowded accommodations with the resultant increase in disease, delinquency and immorality."

We cannot construe the statutory provisions referred to as authorizing or empowering the city to regulate charges for hotel housing accommodations. The anticipated results from increased hotel rates, as shown by the city's statement above quoted, would not seem to follow as a logical consequence and are too remote to show a reasonably causal connection between the raise of rates and the ultimate dispossessing of those at the bottom of the so-called pyramid. That such results would follow an increase in rent for hotel accommodations is not shown by the evidence in the record but is a conclusion reached through anticipation. An ordinance passed for the promotion of health or the suppression of disease must be reasonable in its character and rest upon the ground that it

is a necessary means of preserving the public health. *People* v. *Board of Education,* 234 Ill. 422, and cases cited.

The control of hotel rates is a regulation of hotel business. The police power given under section 23-105 of the statute does not grant power to the city to regulate the hotel business. (*City of Chicago* v. *M. & M. Hotel Co.* 248 Ill. 264.) This section confers no additional powers and cannot be invoked as an independent source of legislative power. *City of Bloomington* v. *Wirrick,* 381 Ill. 347.

The ordinance in question has no basis of support in either the health or police power provisions of the statutes. There is no other statutory authority cited by the city upon which its ordinance can stand. It is left without support and must be held void.

Other points are argued in the briefs which will not require discussion. They have all been considered and we are satisfied from the record that the circuit court was in error in dismissing the complaint for want of equity and its judgment will be reversed and the cause remanded, with directions to enter a decree for injunction, as prayed.

*Reversed and remanded, with directions.*