Argued December 8, 1977, affirmed March 21, 1978

# LYONS, *Appellant,*
*v.*
# KAMHOOT et al, *Respondents.*
(No. 422-869, SC 25185)
575 P2d 1389

Louis Savage, Legal Aid Service, Portland, argued the cause for appellant. With him on the brief were James E. McCandlish, Beverly Stein and Michael H. Marcus, Portland.

Walter A. Barnes of Huffman & Barnes, Oak Grove, argued the cause and filed the brief for respondents.

Before Denecke, Chief Justice, Holman and Lent, Justices, and Richardson, Justice Pro Tempore.

RICHARDSON, J., Pro Tempore.

**RICHARDSON, J.,** Pro Tempore

Plaintiff appeals an order granting defendants' motion for involuntary nonsuit. Plaintiff's complaint alleged that defendants converted her electric organ by improperly asserting an innkeeper's lien pursuant to the former ORS 87.525.[1] The matter was tried to the court without a jury. At the close of plaintiff's case the court considered defendants' motion for nonsuit made on the ground plaintiff had no right to possession of the organ on the date of the alleged conversion since they asserted a valid innkeeper's lien. Plaintiff argues her occupancy of a room in defendants' hotel is covered by the Residential Landlord and Tenant Act, ORS 91.700 et seq, and the innkeeper's lien does not apply. In granting the nonsuit the court held defendants had a valid lien and that the former ORS 87.525 was not repealed by the Residential Landlord and Tenant Act. We affirm.

■ In reviewing the grant of a motion for involuntary nonsuit we assess the evidence in a light most favorable to plaintiff to determine if there is any evidence that would support a judgment for plaintiff. According to the opening statements of both counsel there was no dispute in the material facts.

Defendants Bruce Kamhoot and Harry Thompson own the Cascadian Residential Hotel, defendant Thomas Loston is the manager. The rooms in the hotel are rented on a daily, weekly or monthly basis as chosen by the guest. The hotel also provides meals at the option of the guests.

Plaintiff and her daughter moved into the hotel on October 15, 1974, after her house was rendered uninhabitable by a fire. She testified she intended to stay in the hotel until her house was repaired. This was estimated to take approximately 30 days. She had

---

[1] ORS 87.525 was repealed after the alleged conversion in this case and replaced by similar language in ORS 87.156.

arranged with the Public Welfare Division and the Red Cross to pay for her room and meals at the hotel.

In addition to clothing and personal items plaintiff brought her electric organ, which was stored in the lobby of the hotel. Her house was repaired by November 15, 1974, and she moved from the hotel to her home taking her personal items but leaving the organ. Later that day she returned for the organ and was told by the hotel manager it was being held for the balance due on the hotel bill and it would not be released until the hotel charges were paid.

Plaintiff had some difficulty in obtaining funds from the Public Welfare Division. In April 1975 plaintiff wrote a letter to the hotel stating she had obtained the money to pay the hotel bill and would pick up the organ. The manager of the hotel replied in a letter that the organ had been sold to satisfy the charges.

The primary question we must resolve is whether plaintiff's one month stay at the hotel is within the scope of the Residential Landlord and Tenant Act, ORS 91.700 et seq. If it is defendants are limited to the remedies specified in that Act. ORS 91.835(1) provides:

> "A lien or security interest on behalf of the landlord in the tenant's household goods is not enforceable unless perfected before October 5, 1973."

Consequently, defendants' lien would have been invalid at the time of the alleged conversion on November 15, 1974, if plaintiff's occupancy was covered by the Act. It follows plaintiff would have been entitled to possession on that date.

The Act applies

> "* * * to regulate and determine rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state." ORS 91.715.

It specifically excludes from its purview

"[t]ransient occupancy in a hotel or motel." ORS 91.710(4).

It follows if plaintiff's stay at the hotel was a "transient occupancy" it is not covered by the Act and defendants may properly assert an innkeeper's lien under the former ORS 87.525.

■■ "Transient occupancy" is not defined in the Act. We are therefore required to determine its meaning in the context used. The Act is designed in some measure to provide protection to persons who rent premises to establish a residence. The critical factor is the intent of the occupier of the premises to establish a relatively permanent residence in the facilities designed for that purpose.

■ In contrast transient occupancy of a hotel room lacks the intent to create a permanent living arrangement typical of a residence. The exclusion "transient occupancy in a hotel or motel" has two parts. The occupancy must be in a hotel or motel and must be transient. Defendants' premises are described as a "residential hotel." The record does not disclose the precise meaning of the term "residential hotel," but does disclose the rooms can be rented on a daily, weekly or monthly basis as the guest desires. On this basis we hold it was a "hotel" within the meaning of the exclusion in the Act and satisfies one part of the definition. It remains then to determine if plaintiff's occupancy in the hotel was transient.

■ Our research has disclosed only one Oregon case which attempts to define the relationship between an innkeeper and a guest, *McIntosh v. Schops,* 92 Or 307, 180 P 593 (1919). In that case the plaintiff, who occupied a room in defendant's hotel, sought to recover the value of clothing stolen from his room. He proceeded in his claim upon the theory of strict liability of an innkeeper. The question then was whether defendant was an innkeeper subject to strict liability or a boardinghouse keeper liable only for negligence loss.

The court concluded plaintiff's occupancy was of a permanent nature and he therefore was a boarder not a guest. The court noted plaintiff lived in the hotel for two years at a rental of $12 per month. The critical distinguishing factor was the relative permanence of the occupancy. In essence the plaintiff had made the hotel his residence.

The federal courts have been called upon, in another context, to define transient occupancy. The Federal Civil Rights Act, 42 USC § 2000a (b)(1) (1970), lists the establishments subject to the Act as "any inn, hotel, motel, or other establishment which provides lodging to transient guests. * * *" The federal courts have determined this definition included rooms in a YMCA, *Stout v. Young Men's Christian Ass'n of Bessemer, Alabama,* 404 F2d 687 (5th Cir 1968); *United States v. Young Men's Christ. Ass'n of Columbia, S.C.,* 310 F Supp 79 (D SC 1970); beach cabins rented for vacation purposes, *United States v. Beach Associates, Inc.,* 286 F Supp 801 (D Md 1968); and spaces in a trailer park, *Dean v. Ashling,* 409 F2d 754, 7 ALR Fed 445 (5th Cir 1969). In these cases the courts have not agreed upon a precise length of stay which would distinguish a transient from a nontransient guest. The phrase was generally accepted as meaning short-term guests who stay from one day to a few weeks but who do not reside permanently in the establishment. In essence these establishments were characterized by temporary living arrangements not permanent residences.

In this case the plaintiff's testimony establishes she was a transient occupant of the hotel. She testified she was staying in the hotel until her home had been repaired. She had not abandoned her home to take up residence in the hotel but was establishing a temporary living arrangement until her home was made habitable. Since her occupancy was not covered by the Residential Landlord and Tenant Act the defendants' lien was proper and plaintiff therefore had no right to

[ 620 ]

possession of the organ on the day of the alleged conversion. There was no evidence from which the court as the trier of fact could have arrived at a contrary conclusion. The motion for involuntary nonsuit was properly granted.

Affirmed.