THE CITY OF EVANSTON, Plaintiff-Appellant, v. WILLIAM O'LEARY *et al.*, Defendants-Appellees.

First District (2nd Division) No. 1—90—3171

Opinion filed March 16, 1993.

Jack M. Siegel, Corporation Counsel, of Evanston (Ellen Szymanski, Assistant Corporation Counsel, of counsel), for appellant.

Fuchs & Roselli, Ltd., of Chicago (Robert F. Fuchs and Mark H. Schiff, of counsel), for appellees.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

The City of Evanston (the City) sued William O'Leary and Debra Cox for violating the Evanston Residential Landlord and Tenant Ordinance (Landlord Ordinance) by locking two tenants of the Claridge out of their rooms. The City sought from each defendant payment of a fine of $500. The trial court dismissed the complaint on grounds that the ordinance did not apply to any tenancy for rooms in the Claridge, and the City appeals. We hold that the ordinance applies to tenancies for rooms in the Claridge, and therefore, we reverse.

On May 2, 1990, William O'Leary, acting as agent for the owner of the Claridge, locked David White out of his room in that building. The record does not show for how long White had the room or why O'Leary locked him out. On May 10, 1990, Debra Cox, also an agent for the building owner, locked Addis Clinton out of the room at the Claridge where he had resided for about three months because he was five days behind in his rent. The parties to the Cox case agreed that the decision in the O'Leary case would bind resolution of Cox's case as well.

The Claridge is a rooming house of six one-bedroom apartment units and 44 rooming units located in a single-family residence district, where rooming houses are not permitted. As a building put to a nonconforming use, the Claridge was subject to elimination on or before December 8, 1986. The owners of the Claridge applied for variations from the zoning ordinance in 1986, and the city council granted

the application by ordinance adopted in March 1988. The council stated in the ordinance that although the Claridge is classified as non-residential under the Zoning Ordinance,

"the building is being used for moderate income housing, which is consistent with the residential composition of the neighborhood.

\*\*\* The proposed variations will not be detrimental to the public welfare \*\*\*, since the subject building is located in a mixed-use neighborhood, provides moderate income housing and would probably not be developed with a single-family dwelling if the building were removed as required by [the zoning ordinance]." Evanston, Ill., Ordinance No. 99—0—87 (1988).

The council made the grant of variation subject to conditions restricting rent increases for two years after adoption of the ordinance. Evanston, Ill., Ordinance No. 99—0—87 (1988).

The City presented to the trial court a list that defendants prepared of the Claridge's 46 tenants and the amount of time each had spent at the Claridge. None of the 46 had spent less than one month there and only two had been there less than two months. Thirty of the forty-six tenants had lived in the Claridge for at least one year, and 14 residents had lived there at least five years. The tenants of the Claridge, including Clinton and White, paid rent on a week-to-week basis. Rents ranged from $49 to $73 per week, which is roughly equivalent to $210 to $320 per month.

The Landlord Ordinance provides:

"It is unlawful for any landlord or any person acting at his direction to knowingly oust or dispossess \*\*\* any tenant from a dwelling unit without authority of law, by plugging, changing, adding or removing any lock or latching device." (Evanston, Ill., Municipal Code §5—3—12—1.)

The named acts are not barred if the landlord complies with Illinois law pertaining to forcible entry and detainer or distress for rent (Ill. Rev. Stat. 1989, ch. 110, par. 9—101 *et seq.*), if the landlord acts pursuant to court order, if the landlord interferes with possession only to make needed repairs, or if the tenant has abandoned the dwelling unit. Evanston, Ill., Municipal Code §5—3—12—2.

The Landlord Ordinance expressly provides that it applies to "rental agreement[s], wherever made, for \*\*\* dwelling unit[s] located within the City." (Evanston, Ill., Municipal Code §5—3—1(D)1.) The ordinance also provides that it does not govern arrangements for:

"a. Residence at a public or private medical, geriatric, educational or religious institution;

b. Occupancy under a contract of sale of a dwelling unit if the occupant is the purchaser;

c. Occupancy in a structure operated for the benefit of a social or fraternal organization; or

d. Transient occupancy in a hotel or motel." Evanston, Ill., Municipal Code §5—3—1(D)2.

The Landlord Ordinance defines "dwelling unit" as:

"A structure or the part of a structure that is used as a home, residence, or sleeping place by one or more persons who maintain a household." (Evanston, Ill., Municipal Code §5—3—2(A).)

It defines "rental agreement" as:

"All agreements, written or oral, *** concerning the use and occupancy of a dwelling unit and premises" (Evanston, Ill., Municipal Code §5—3—2(A)),

and it defines "tenant" as:

"A person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others" (Evanston, Ill., Municipal Code §5—3—2(A)).

The trial court found that Clinton and White were tenants, within the meaning of the ordinance, so it implicitly found that they had rental agreements to occupy dwelling units in the Claridge. The trial court found that the ordinance did not apply to any of the rental agreements for rooms in the Claridge because the City licensed the Claridge as a "rooming house," which is classified as a nonresidential land use under the City's zoning ordinance and, therefore, the Claridge did not fall within the purview of the *"Residential* Landlord and Tenant Ordinance." (Emphasis added.) (Evanston, Ill., Municipal Code, §5—3—1(A).) The court did not decide whether the Claridge qualified as a "hotel," or whether the tenants had "[t]ransient occupancy" of their rooms, within the meaning of the Landlord Ordinance.

Courts apply the principles of statutory construction to ordinances. (See *City of Rolling Meadows v. Kyle* (1986), 145 Ill. App. 3d 168, 494 N.E.2d 766.) The applicable principles depend, to some extent, on the kind of legislation to be construed. In *Scott v. Association for Childbirth at Home* (1981), 88 Ill. 2d 279, 430 N.E.2d 1012, the defendant argued that the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 261 *et seq.*) "must be held to a strict standard of definiteness because it is penal in nature." (*Scott*, 88 Ill. 2d at 288.) Our supreme court rejected the argument, finding:

"The Act is a regulatory and remedial enactment intended to curb a variety of fraudulent abuses and to provide a remedy to

individuals injured by them. Its stated purpose, set forth in its preamble, is to protect Illinois consumers, borrowers, and businessmen against fraud, unfair methods of competition, and other unfair and deceptive business practices. The Act is clearly within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils. [Citations.] The fact that a civil penalty of up to $50,000 can be imposed does not make the Act a penal statute. [Citations.] Rather, as in the case of the Environmental Protection Act, the penalty is but one part of the regulatory scheme, intended as a supplemental aid to enforcement rather than as a punitive measure." *Scott,* 88 Ill. 2d at 288.

The City adopted the Landlord Ordinance

"in order to protect and promote the public health, safety and welfare of the citizens, to establish rights and obligations of the landlord and the tenant in the rental of dwelling units and to encourage the landlord and the tenant to maintain and improve the quality of housing." (Evanston, Ill., Municipal Code §5—3—1(B).)

As such, it is a remedial statute granting remedies for the protection of rights; the statute includes fines, such as the one at issue here, as part of a regulatory scheme conducive to the public good. (See *Kampen v. Department of Transportation* (1986), 150 Ill. App. 3d 578, 583, 502 N.E.2d 31.) The Landlord Ordinance provides that it "shall be liberally construed and applied to promote its purposes and policies." (Evanston, Ill., Municipal Code §5—3—1(C).) This directive appropriately states the standard for construction of all such remedial ordinances. *Hettermann v. Weingart* (1983), 120 Ill. App. 3d 683, 690, 458 N.E.2d 616.

The Landlord Ordinance provides that it applies to all rental agreements for dwelling units in Evanston. The trial court found, and defendants concede, that the Claridge contains dwelling units, and occupants of those units reach oral agreements for occupancy. The agreements satisfy the ordinance's definition of "rental agreements." Therefore, the ordinance provides that it applies to agreements for rooms at the Claridge unless the agreements fall under the ordinance's exclusions, listed at Evanston, Ill., Municipal Code §5—3—1(D)2. Defendants do not argue that the agreements fall under exclusions a, b or c, but they argue that the agreements are excluded as arrangements for "[t]ransient occupancy in a hotel or motel." Evanston, Ill., Municipal Code §5—3—1(D)2.

The Landlord Ordinance does not define "hotel." Defendants rely upon the zoning ordinance, which defines "hotel" as:

"A building which provides a common entrance, lobby, halls and stairways, and in which lodging is offered with or without meals principally to transient guests."

The City contends that the Claridge is not a hotel, citing several cases which distinguish hotels from apartment houses, boarding houses, and other lodgings. (*Moyer v. Board of Zoning Appeals* (Me. 1967), 233 A.2d 311; *Ambassador Athletic Club v. Utah State Tax Comm'n* (1972), 27 Utah 2d 377, 496 P.2d 883; *Vigeant v. Nelson* (1908), 140 Ill. App. 644.) In these cases, the courts relied on the transient nature of the hotel guest's stay to distinguish hotels from other accommodations. Even if "hotel" in the Landlord Ordinance can be construed to include apartment hotels, where residence is relatively permanent (see *Ambassador East, Inc. v. City of Chicago* (1948), 399 Ill. 359, 77 N.E.2d 803), the ordinance may still apply to prevent lockouts. The ordinance does not exclude from coverage all tenancies in hotels: it excludes only agreements for "[t]ransient occupancy" in hotels. Therefore, the crucial question is whether the tenants of the Claridge have only transient occupancy of their rooms.

■ The Landlord Ordinance does not define "transient" or "transient occupancy." To determine legislative intent for construction of undefined words in statutes and ordinances, the court must consider the purpose of the statute. (*Mack v. Seaman* (1983), 113 Ill. App. 3d 151, 154, 446 N.E.2d 1217.) The Landlord Ordinance regulates "the procedures by which a landlord can evict a tenant." (*Landry v. Smith* (1978), 66 Ill. App. 3d 616, 621, 384 N.E.2d 430.) It is a proper exercise of the City's home rule power because "[t]he Illinois Forcible Entry and Detainer Act *** does not limit or deny the right of a home rule unit to enact legislation concerning the eviction process." (*Landry*, 66 Ill. App. 3d at 618.) The appellate court in *Landry* found that "Evanston, a city with numerous rental dwellings, has a significant interest in the prevention of the eviction of its residents from their homes." *Landry*, 66 Ill. App. 3d at 619.

The Landlord Ordinance provides more specific limitations on landlords than those provided in the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1989, ch. 110, par. 9—101 *et seq.*), but the ordinance and the statute have similar purposes and seek to eliminate similar problems. In the Landlord Ordinance, as in "the Forcible Entry and Detainer Act, *** there is discernible a certain public policy, based upon humane considerations of the wrong, oppression and hardships which might ensue, if families, in any kind of weather, at any time of

day or night, might be thus forcibly ejected from their homes with all their effects, without notice or warning." *Burns v. Nash* (1887), 23 Ill. App. 552, 557.

Although we are not aware of any Illinois case which decides when occupancy of a room is "transient," the Oregon Supreme Court has construed a statute very similar to the Landlord Ordinance, named the Residential Landlord and Tenant Act (Or. Rev. Stat. §91.700 *et seq.* (1973)). That act provided, in language similar to the ordinance, that it applied to rental agreements for dwelling units, and it expressly did not apply to "[t]ransient occupancy in a hotel or motel." (Or. Rev. Stat. §91.710(4) (1973).) The court stated:

> " 'Transient occupancy' is not defined in the Act. We are therefore required to determine its meaning in the context used. The Act is designed in some measure to provide protection to persons who rent premises to establish a residence. The critical factor is the intent of the occupier of the premises to establish a relatively permanent residence in the facilities designed for that purpose.
>
> In contrast transient occupancy of a hotel room lacks the intent to create a permanent living arrangement typical of a residence." *Lyons v. Kamhoot* (1978), 281 Or. 615, 619, 575 P.2d 1389, 1390-91.

After finding that a residential hotel, where tenants could rent rooms by the day, the week, or the month, qualified as a "hotel" within the statute, the court considered when a stay could be considered "transient occupancy":

> "[T]he courts have not agreed upon a precise length of stay which would distinguish a transient from a nontransient guest. The phrase was generally accepted as meaning short-term guests who stay from one day to a few weeks but who do not reside permanently in the establishment. In essence these establishments were characterized by temporary living arrangements not permanent residences." *Lyons*, 281 Or. at 620, 575 P.2d at 1391.

We find that the Oregon court's interpretation of the statute comports with the purposes of the Landlord Ordinance. Since the ordinance provides protection for resident renters from eviction from their homes, the ordinance applies to permanent residences, even to permanent residence in a hotel. "Transient occupancy," in the Landlord Ordinance exclusion, refers to short-term stays "from one day to a few weeks"; it is the opposite of permanent residence.

■ Here, virtually all of the Claridge's tenants had stayed there more than a few weeks. The Evanston city council noted that the building fit in with the residential character of the neighborhood because it effectively provided residential housing, although for zoning purposes the building was classified as nonresidential. There is no indication that either evicted tenant had another permanent address after he began living at the Claridge. It appears that there is no basis in this record to conclude that either Clinton or White was a transient occupant of the Claridge, so that neither tenant's rental agreement falls within the exclusions from the Landlord Ordinance even if the Claridge could be considered a hotel.

Defendants contend that all tenants of the Claridge must be considered transients because they have week-to-week tenancies. Defendants rely on the zoning ordinance, which defines "transient" as:

"[a] tenant who does not have a lease and occupies an apartment, lodging room or other living quarters on a daily or weekly basis."

The definitions given in the zoning ordinance have little value for interpreting the Landlord Ordinance.

"[S]eparate acts with separate purposes need not define similar terms in the same way, but, rather, the same word may mean one thing in one statute and something different in another, dependent upon the connection in which the word is used, the object or purpose of the statute and the consequences which probably will result from the proposed construction." *Mack*, 113 Ill. App. 3d at 154.

The fact that tenants of the Claridge pay rent by the week should not suffice to deprive them of the protection of the Landlord Ordinance where they have shown an intent to set up permanent residence in the dwelling units. To construe the ordinance to deprive tenants of the Claridge, who pay by the week, of protection would arguably violate the requirements of equal protection by discriminating irrationally against poor persons, since the apartments in the Claridge provide rental rates substantially lower than market rates for other housing in the same area. The Evanston city council explicitly recognized the provision of moderate income housing as one function of the Claridge, and accordingly, when the council approved the variation for the Claridge, it limited the amount by which rents could be increased. We must avoid, if possible, a construction of the ordinance which would raise doubts about its constitutional validity. (*People v. Krueger* (1991), 208 Ill. App. 3d 897, 904, 567 N.E.2d 717.) The purposes of the Landlord Ordinance are served by construing it to

protect all permanent residents of rental property, whether they pay rent by the week or by the month. Even if the Claridge is considered a hotel, the trial court erred in dismissing the complaints against defendants without evidence that White and Clinton were transient occupants of the Claridge.

■ The trial court relied on the definition of "residential building" given in the zoning ordinance to support dismissal of the charges, effectively holding that the "Residential Landlord and Tenant Ordinance" cannot apply to property classed as nonresidential by the zoning ordinance. The trial court's construction of the Landlord Ordinance rendered its exclusions superfluous: since hotels, fraternities, and nursing homes, defined for zoning as nonresidential uses, were already excluded from the Landlord Ordinance, there was no need to repeat the exclusions for those properties in the Landlord Ordinance.

The Landlord Ordinance effectively provides its own definition of "residential." It defines the range of its application, confining its effect to rental agreements, as defined in the ordinance, for dwelling units, as defined in the ordinance, located in the City. It also lists four specific exclusions from its operation. The city council, in the clear terms of the ordinance, shows an intent to treat as a residential landlord any property owner who rents out dwelling units under agreements that do not fall within the specified exclusions. Where the meaning of an ordinance is clear, the court should not look to extrinsic aids, such as unrelated ordinances, for interpretation of its terms. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277, 469 N.E.2d 167.) Moreover, the trial court's restrictive construction of the ordinance directly opposes the statutory purpose of limiting the landlord's right to evict tenants from their homes. Even criminal statutes must not be so rigidly construed as to defeat legislative intent. *People v. Haywood* (1987), 118 Ill. 2d 263, 271, 515 N.E.2d 45.

■ The trial court found that because the owners of the Claridge paid a licensing fee to operate as a "rooming house," "The City of Evanston is *** estopped from enforcing section 5—3—12—1 of its Landlord/Tenant Ordinance for unlawful interruption of tenancy against The Claridge." Defendants on appeal do not attempt to support the trial court's decision on that basis, but they argue that the City is estopped because its officials promised to dismiss the case if the Claridge showed that its residents had week-to-week tenancies. The record contains no evidence supporting defendants' assertion that the City or its officials made such a promise.

Courts can find a municipality estopped from enforcing its ordinances only in compelling circumstances. (*City of Chicago v. Unit One Corp.* (1991), 218 Ill. App. 3d 242, 246, 578 N.E.2d 194.) As a minimal prerequisite, the party claiming estoppel against a municipality must show affirmative acts by municipal officers which induced the party claiming estoppel to act in reliance on the officers' acts. (*Lindahl v. City of Des Plaines* (1991), 210 Ill. App. 3d 281, 295, 568 N.E.2d 1306.) The record shows no facts which could give rise to an estoppel against the City. Defendants have not alleged any acts which they made in reliance on representations or acts of the City's officers. The fact that the City considers a land use "nonresidential" for its zoning ordinance cannot deprive the City of the power to protect persons renting dwelling units in such property from unreasonable evictions.

For the reasons stated above, the trial court order dismissing the City's complaint is reversed, and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

SCARIANO and DiVITO, JJ., concur.