ANCONA PRINTING COMPANY, APPELLANT, v. WELSBACH COMPANY, RESPONDENT.

Argued March 6, 1918—Decided June 17, 1918.

1. In an action to recover double the yearly value of premises which the tenant holds and refuses to surrender to the landlord after expiration of his term, and written demand for possession, the annual rent for the expired term is not conclusive as to yearly value, and therefore a request to direct a verdict for plaintiff for double the rent paid under the lease for the expired term was properly refused as the yearly value may be more or less than the prior rent paid.

2. A belief of the tenant that he has a right to hold over must, in order to avoid the penalty of double yearly value, be an honest one based on reasons sufficient to induce a jury to believe he had a right to remain in possession after written demand therefor, the mere statement that he believed he had such right is not sufficient, and an instruction to the jury that if the tenant believed that he had such a right the holding over was not willful, and the plaintiff's case failed, was erroneous.

---

On appeal from the Supreme Court.

For the appellant, *Wescott & Weaver.*

For the respondent, *Bleakly & Stockwell.*

The opinion of the court was delivered by

BERGEN, J.   This action was brought against a tenant to recover double the yearly value of the demised premises for a period during which, it is alleged, the tenant willfully held

possession after the expiration of its term, and is based on section 27 of our statute, entitled "An act concerning landlords and tenants" (*Comp. Stat., p.* 3065), which enacts that if any tenancy for any term of life or lives, year or years, or those who shall come into possession under, or by collusion with any such tenants, shall willfully hold over after the determination of such terms, and after demand made and notice in writing given for the delivering of the possession thereof by the landlord or the reversioner, "such person or persons so holding over, shall, for and during the term he, she or they, shall so hold over, or keep the person or persons so entitled out of the possession of said land," pay, to the party so kept out of possession, "at the rate of double the yearly value of the lands" for so long a time as the same are detained. In order to have the benefit of this act the plaintiff must prove that the tenancy has expired; a demand for possession, and that the tenant willfully holds over.

Sections 27 and 28 of the statute are substantially counterparts of those of 4 *Geo. II., c.* 28, § 1, and 11 *Geo. II., c.* 19, § 18, respectively, the latter providing that where the tenant gives notice of his intention to quit, and does not comply, he shall pay double the rent he would have paid, the distinction being that if the tenant holds over after his notice to quit he shall pay double *rent,* but if the tenant holds over after demand of possession by his landlord he is liable, not for double rent, but for double the *yearly value.* In this case the suit is for double the yearly value, and the testimony shows that the tenant's term, as expressed in its lease, had expired June 30th, 1916, and it was bound to surrender the premises on that day, or within such reasonable time thereafter as would permit the removal of reserved fixtures; that the landlord demanded delivery of possession July 6th, 1916; that defendant did not surrender until December 30th, 1916; and, therefore, if the holding over was willful, the plaintiff was entitled to double the yearly value of the premises from July 6th, 1916, to December 30th, following, as was held in *Cobb* v. *Stokes,* 8 *East* 357, the willfulness beginning with the written demand.

The jury found for the defendant, and plaintiff appeals, relying principally upon the refusal of the trial court to direct a verdict for plaintiff, and an alleged error in the instruction of the jury by the court. The refusal of the motion to direct for the plaintiff for double the amount of the rent reserved in the lease was proper. This being a penal statute is to be strictly construed, and it does not fix as a penalty double the rent for the previous year, as in section 28, where the tenant holds over after giving notice that he will quit the premises, but double the yearly value, and this distinction in penalty between the two sections indicates that the legislature intended a different penalty for the violation of the respective sections, one being double rent, and the other double the yearly value. We are of opinion that what is the yearly value is a jury question, and while the prior rent is some evidence of the yearly value, it is not conclusive, for such value might be more or less than the previous rent, and the determination of that fact is essentially a jury function. It was not error to refuse a direction for the plaintiff for double the rent reserved for the previous year as requested.

The consideration of the second ground of appeal, which relates to instructions given to the jury, requires a short *résumé* of the facts. The plaintiffs, by a written agreement dated September 26th, 1904, and a supplemental one dated March 14th, 1905, let to defendant the premises which this controversy involves, for a term expiring June 30th, 1915; on March 7th, 1914, another agreement was entered into by the plaintiff and defendant by which the original letting was extended from June 30th, 1915, to June 30th, 1916, upon the same conditions, except an increase in the rent from $6,750 and taxes, as reserved in the original and supplemental leases, to $10,000 and taxes. Under this agreement the defendants were to surrender possession on June 30th, 1916, subject to the right to remove, at the termination of the term, all fixtures, gas works, holders and appurtenances erected on the lands by defendant during the term, the buildings erected to become the property of the lessor. In

September, 1915, in reply to an offer by the defendant, the plaintiff wrote it a letter offering to extend the lease for five years at an annual rent of $15,000, stating, however, that the property was not for sale; to this defendant replied, under date of October 6th, 1915, that if the property was not for sale it was no longer necessary to "consider a further lease of the premises." There were subsequent attempts by defendant to purchase the property and also an offer made June 26th, 1916, to lease at $12,000 a year, but these negotiations did not result in any agreement, and on July 6th, 1916. plaintiff demanded in writing, possession of the property. Between that time and December 30th, 1916, the defendants remained in possession, removing their machinery and other fixtures which they were entitled to remove, but with extreme deliberation, as a jury might find, and in the meantime using each machine for manufacturing purposes until it was moved from the premises. Whether the fixtures were removed within a reasonable time, or so delayed for the convenience of the defendant as to amount to a willful holding over, was a jury question.

The president of the defendant company testified that he had an honest belief that his company did not have to surrender possession as demanded, because he had every reason to believe that the plant would be sold or leased to his company, notwithstanding the demand for possession on July 6th, 1916, and their previous inability to agree upon terms, as well as the fact that defendants had commenced the removal of its fixtures before the expiration of the lease to another location, which it was preparing for the continuance of its business. Such a belief to be available must be an honest *bona fide* one. based on facts from which such an inference can be drawn. "A tenant cannot relieve himself by the mere statement that he believed he had a right to hold the premises. He must furnish reasons sufficient to induce a jury or court hearing the case to believe he had a right to remain in possession." 16 *R. C. L.* 1171, § 692, and cases cited.

Instead of submitting to the jury the question whether, under the facts, the defendant was justified in his alleged belief, the jury was instructed, "If they (defendants) did not have the right; did they believe that they had such a right. If they did, why then the plaintiff's claim goes for nothing because the statute is based upon willful action." This amounted to an instruction to find for the defendant if defendant believed it had a right to hold over, and entirely ignored the right of the jury to find whether any reason for such belief existed in the proofs. We think there was no evidence to justify, under the rules of law, any such belief, and the jury might have so found except for the instruction that defendant was not liable for holding over if it believed it had a right to do so, although in fact the right did not exist as the jury might have found under the evidence. This was an erroneous instruction and injurious to the plaintiff, for while the English cases hold that the holding over must be willful and contumacious (*Swinfen* v. *Bacon,* 6 *H. & N.* 184), a refusal to deliver possession after written demand is willful and contumacious unless it be of right, or there be shown some reason for an honest belief that it is justified.

We have not been referred to a case, nor can we find any, which holds that the mere statement of such a belief is a sufficient excuse. Reasons for the belief must appear, and the jury are entitled to find whether they are sufficient to justify it, and it was clearly error to limit the jury in the present case to the question of defendant's belief, for it was their province to say whether it was an honest belief, based upon facts which would reasonably justify it.

The judgment below is reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.    14.