DEWEY LIBRIZZI, RELATOR, v. JAMES J. PLUNKETT, LICENSE COMMISSIONER, JOHN A. BRADY, ACTING SUPERVISOR OF THE DEPARTMENT OF PUBLIC SAFETY OF THE CITY OF NEWARK, AND CITY OF NEWARK, A MUNICIPAL CORPORATION, RESPONDENTS.

Argued August 26, 1940—Briefs Submitted September 16, 1940—Decided November 22, 1940.

18

Before Justice HETTER, at chambers, pursuant to *R. S.* 1937, 2:83-1, *et seq.*

For the relator, *Fast & Fast* (*Louis A. Fast,* of counsel).

For the respondents, *James F. X. O'Brien* (*Simon Englander,* of counsel).

HETTER, J. Relator applied to the Director of Public Safety of the respondent municipality for a "Wrecker Owner's License" and a "Wrecker Operator's License" under a local ordinance entitled "An Ordinance Concerning the Regulation of Vehicles Commonly Known as 'Wreckers' and the Licensing of the Owners and Drivers Thereof," adopted September 12th, 1934. The applications were denied on the ground that the applicant had a "criminal record," although it had also been taken into consideration that he had committed a violation of the ordinance during the preceding year. He had held such licenses, issued annually, for the two prior years. The infraction of the ordinance does not seem, however, to have been a motivating circumstance; it was the "criminal record" over a period of years that induced the action.

Relator's vehicles were registered with the Commissioner of Motor Vehicles in accordance with the provisions of *R. S.* 1937, 39:3-4, *et seq.;* and the first point made is that the requirement of "additional licenses from the respondents" runs counter to the provisions of section 39:3-42. The ordinance did not receive the approval of the Commissioner of

Motor Vehicles, nor was it submitted to him for such action; and it is said that it is therefore lacking in validity, since it "regulates traffic or traffic conditions," and thus is of the class requiring such approbation under section 39:4-8—citing *Eveler* v. *Atlantic City,* 91 *N. J. L.* 135. The point is without substance.

This statutory provision is applicable only to ordinances designed to regulate traffic on public highways. It has its genesis in chapter 148 of the laws of 1930, as amended by chapter 129 of the laws of 1931, whereby there came into being a traffic commission whose powers and duties have since, by chapter 179 of the laws of 1932, been transferred to the Commissioner of Motor Vehicles. *Pamph. L.* 1930, *p.* 564; *Pamph. L.* 1931, *p.* 220; *Pamph. L.* 1932, *p.* 306; *R. S.* 1937, 39:4-2. The standard set down for the guidance of the commissioner in the exercise of the power is "the interest of safety and the expedition of traffic on the public highways." As declared in *Eveler* v. *Atlantic City, supra,* the legislative aim was to promote "uniformity" in the regulation of "traffic throughout the state."

Here, the ordinance is confined to the regulation of a business in the exercise of the police power. Evidently, this business is of a character peculiarly subject to police regulation. The object of the enactment is to advance the public interest by (a) the provision of adequate service of this class at reasonable rates; (b) the maintenance of such vehicles in a safe and sanitary condition; (c) the protection of the public through indemnity insurance, and otherwise; (d) safety in operation; and (e) the recording in a specified manner of all the circumstances attending the handling of a disabled vehicle, and the licensee's employment for that purpose, obviously a regulation of first rank as regards the public safety, particularly in the enforcement of the Crimes act and kindred statutes, and the protection of persons and property. Manifestly, these considerations do not govern the Commissioner of Motor Vehicles in the exercise of the power conferred by section 39:4-8, *supra.* That authority is limited to the regulation of traffic, *qua* traffic, on public highways.

This ordinance, so viewed, was not *ultra vires* the municipality. It constituted the exercise of a governmental func-

tion comprehended by the police power. This plenary sovereign power has been delegated to the municipalities in broad, general terms. *R. S.* 1937, 40:48-1, 40:48-2. The safeguarding of persons and property is a primary police function of such municipal subdivisions; so also the detection of crime and the prosecution of the perpetrators.

The next insistence is that the ordinance does not prescribe "a moral test," and so the rejection of the application on the ground of the "applicant's criminal record," there having been compliance with all the provisions of the regulation, constituted arbitrary action.

The regulation does not lay down a definite and specific disqualification as respects the prior commission of crime. The applicant for an "owner's" license is required to set forth certain data not here pertinent, and "any other information which" the Director of Public Safety "shall deem necessary and proper for the full protection of the public's interest." One who seeks an operator's license is under a duty to certify in writing as to whether he has ever been "convicted of a felony or misdemeanor or a violation of" the ordinance, and "whether he has been previously licensed as a driver or chauffeur and if so whether his license has ever been revoked in the" municipality "or elsewhere and for what cause," and to affix to "said statement, which shall be under oath, * * * the endorsement of four reputable citizens of the" municipality "and of the Supervisor of the Traffic Bureau of the Police Department." But that in itself is not sufficient in this behalf. Would one conviction of crime, regardless of the time and the nature of the offense, compel the rejection of either application? Obviously not, for the ordinance does not say so. What, then, is the standard applying alike to all who may invoke the regulation? There is none.

It is elementary that an ordinance which vests in local administrative officers an uncontrolled discretionary authority to grant such business license—it is not of the class of businesses that may be forbidden altogether—to one and to refuse it to another under like circumstances contravenes fundamental law. Such is violative of the plainest principles of justice. It is a power that the municipal governing body itself does not possess. *Vide Keavey* v. *Randall, 1 N. J.*

*Mis. R.* 311; 122 *Atl. Rep.* 379; *South Orange* v. *Heller,* 92 *N. J. Eq.* 505. It is requisite that the regulation establish the terms and conditions upon which the right to the license is made to depend, and thus set down a general rule of action or standard of conduct governing the administrative tribunal. Unless the administrative officer be restrained by a definite, uniform rule of action, the regulation falls as a grant of arbitrary power in violation of the Fourteenth Amendment of the Federal Constitution. If not thus circumscribed, it lends itself to invidious distinctions, and so is arbitrary as depending upon mere will rather than the exercise of a legal discretion in the sense that the delegated authority is confined within certain limits designed to effectuate the indicated legislative policy. This confinement must be such as to preclude oppression and insure impartial execution. This is of the very essense of that equal protection of the laws guaranteed by the Fourteenth Amendment. *Yick Wo* v. *Hopkins,* 118 *U. S.* 356; 6 *St. Ct.* 1064; 30 *L. Ed.* 220. The municipal governing body may not delegate its lawmaking power to the administrative officer; it can do no more than vest in him the authority to execute its expressed legislative will. *Potestas delegata non potest delegari.* Compare *Levy* v. *Mravlag,* 96 *N. J. L.* 367. While the lawmaking body may confer upon the administrative authority a measure of discretion, it is essential that the function be so limited as to constitute the mere execution of the law rather than the exercise by the administrative officer of power in essence legislative. If the enactment embody a formula satisfying this basic requirement, it answers the test of constitutional sufficiency; and there cannot be judicial interference with the proper exercise of the discretion. In such circumstances, the law making body has declared the law, and the exclusive role of the administrative tribunal is its execution. *State Board of Milk Control* v. *Newark Milk Co.,* 118 *N. J. Eq.* 504, 520.

Though the local Director of Public Safety is invested with power to "issue or refuse a license," it is fundamental in the ordinance that the licensee in each instance shall have the fitness and qualifications essential to the fulfillment of the legislative purpose. Essential personal fitness to engage in the business thus regulated in the public interest, viewed from

the aspect of the objects to be served, is implicit in the regulation. The power to grant licenses connotes the power of denial for good cause, in keeping with and to subserve the declared legislative ends. The test is whether there has been a reasonable, *bona fide* exercise of the discretion granted by the legislative authority, as distinguished from arbitrary action. *Gundling* v. *Chicago*, 177 *U. S.* 183; 20 *S. Ct.* 633; 44 *L. Ed.* 725; *State, ex rel. Minces* v. *Schoenig*, 72 *Minn.* 528; 75 *N. W. Rep.* 711. Compare *McBride* v. *Clark*, 2 *N. J. Mis. R.* 814; *affirmed, sub nom. Clark* v. *McBride*, 101 *N. J. L.* 213; *Jones* v. *Orlando*, 119 *Id.* 227. Viewed in the light of the central legislative policy, there is no sufficient ground for distinction between the owner and operator as regards such responsibility. Indeed, the owner, if irresponsible, is in many respects a greater menace to public security.

Since it is not practicable to prescribe a certain, precise rule for the guidance of the subordinate officer in the determination of the applicant's personal fitness and qualifications, such cases are deemed to be of a class in the nature of an exception to the general rule adverted to. In those cases, the delegated authority is classified as a reasonable discretion bounded by the general policy of the enactment, and therefore in no sense arbitrary or capricious. This is deemed to be a legal rather than an absolute discretion—*i. e.,* judgment confined by the principle laid down in the act for the execution of the legislative will embodied therein—a function *quasi*-judicial in nature. That does not trench upon fundamental rights, for its exercise is governed by the circumstances, considered in the light of the intent of the regulation and the standards laid down, and so it is not fairly classable as arbitrary and vicious in constitutional intendment. It would seem that it is of the very essence of the particular regulation that the licensees shall have the fitness requisite for the effectuation of the legislative policy; otherwise, the purpose of the enactment would be frustrated.

Thus it is that conviction of crime is not *ipso facto* a disqualification, unless, possibly, it has effected a loss of citizenship—a status not asserted here. As to this, see *Yick Wo* v. *Hopkins, supra.* It is merely a circumstance to be consid-

ered in the determination of the applicant's present personal fitness and qualifications as respects the public need which brought the regulation into being.

The ordinance also vests in the administrative officer the power of revocation of either license for the "violation of any of" the provisions of the enactment; and the corollary plainly is that an application for a renewal of either license may be denied on the same ground. Observance of the ordinance is an implied condition in regard to the exercise of the right of renewal. That would seem to be fundamental. The limitation of the term of the license to one year, as well as the specific grant of authority to "revoke or suspend" it for such violation, after hearing had, is also indicative of that legislative intention. Here, relator was convicted in a court of competent jurisdiction of a violation, during the prior license year, of a provision of the ordinance enjoining him to keep a record of certain matters pertaining to all vehicles serviced. But the challenged action was not put upon this ground; and it therefore cannot be sustained as founded on a violation of the ordinance in matter of substance.

It is the settled rule that the prerogative writ of *mandamus* is issuable only where there is a clear right to the performance of a ministerial duty, in essence mandatory and final and wholly free of the element of discretion, or to the exercise of a discretionary authority (*Rader* v. *Township of Union,* 43 *N. J. L.* 518; *Mooney* v. *Edwards,* 51 *Id.* 479; *Browne* v. *Lee,* 98 *Id.* 1; *Atlantic Refining Co.* v. *Landis Township,* 120 *Id.* 60); and, since the challenged action was rested upon an untenable ground, and there was no finding respecting the applicant's personal fitness and qualifications, or the bearing upon his status of the violation of the ordinance, I entertain the view that a writ should issue, not to compel the grant of the permits, but commanding re-examination of the applications and action thereon in consonance with the considerations herein outlined. Compare *Squier* v. *Gale,* 6 *Id.* 157; *Roberts* v. *Holsworth,* 10 *Id.* 57; *Benedict* v. *Howell,* 39 *Id.* 221.

A peremptory *mandamus* may issue accordingly.