42 N.J. Super. 193 (1956)
126 A.2d 71
GEORGE J. WAGNER AND PROPERTY OWNERS PROTECTIVE ASSOCIATION, A CORPORATION OF NEW JERSEY, PLAINTIFFS,
v.
THE MAYOR AND THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 9, 1956.
*197 Mr. Harry Weltchek for the plaintiffs (Messrs. Weltchek & Weltchek, attorneys).
Messrs. Jacob M. Goldberg and Joseph A. Ward for the defendants (Mr. Vincent P. Torppey, attorney).
For amici curiae:
Mr. Leon S. Milmed for the Township of Weehawken (Messrs. Milmed & Rosen, attorneys).
Mr. Jacob Dregin for the City of Bayonne (Mr. Frank J. Ziobro, attorney).
Mr. Cyril J. McCauley, attorney for the City of Union City.
Mr. Samuel L. Hirschberg, attorney for West New York.
Mr. Dudley A. Schlosser for the City of Hoboken (Mr. Robert McAlevey, Jr., attorney).
Mr. Ralph P. Messano for the City of Jersey City (Mr. James A. Tumulty, Jr., attorney).
WEINTRAUB, J.S.C.
The complaint attacks the validity of a rent control ordinance adopted by the City of Newark. *198 The ordinance contains a finding of an emergency with respect to housing and declares the ordinance "to be necessary and designed to protect the public health, safety and welfare, and that this ordinance is adopted pursuant to the police powers of the City of Newark."
Plaintiffs move for summary judgment, asserting the ordinance is beyond the power of the municipality and violative of the Federal and State Constitutions. Various municipalities interested in the subject matter petitioned for leave to file a brief as amici curiae. The application was granted.
The motion does not challenge the determination by the city of the existence of an emergency, and hence for the purposes of the motion that finding must be accepted.
The ordinance establishes the Newark Housing Rent Control Commission, which it empowers to adopt rules and regulations to further the objectives of the ordinance with respect to housing within its ambit and to hear and determine applications for rental changes. The ordinance prohibits rental charges in excess of an authorized amount; prohibits a landlord to evict, dispossess or institute proceedings therefor against any tenant paying the lawful rental, whether or not the term of lease has expired, unless the landlord shall first obtain a certificate of eviction from the commission, which certificate may issue for any of a number of reasons set forth in the ordinance. The ordinance provides for a fine not exceeding $500 for any violation thereof.

I.
Plaintiffs initially contend municipalities are without power to adopt ordinances regulating rental charges and evictions no matter how critical the local scene may be.
It is now thoroughly settled that the police power will support state legislation of such character in emergent circumstances. Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 65 L.Ed. 865 (1921); Edgar A. Levy Leasing Company, *199 Inc. v. Siegel, 258 U.S. 242, 42 S.Ct. 289, 66 L.Ed. 595 (1922); Chastleton Corporation v. Sinclair, 264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841 (1924); Jamouneau v. Harner, 16 N.J. 500 (1954), certiorari denied 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955); Brookchester, Inc. v. Ligham, 17 N.J. 460 (1955); Stuyvesant Town, Inc. v. Ligham, 17 N.J. 473 (1955). Plaintiffs do not quarrel with this proposition, but say the police power delegated to municipalities is something less than the total police power of the State and is insufficient to sustain the ordinance. There are two facets to this position: (a) that our statutes do not purport to grant power to enact the ordinance, and (b) if they do, they transcend constitutional limits upon the State's authority to delegate the police power.

A.
There is no general statute which in so many words authorizes the ordinance, but defendant relies upon the Home Rule Act and upon the Optional Municipal Charter Law as well, since it adopted one of the plans therein prior to the enactment of the ordinance. Reference is made to R.S. 40:48-2 of the Home Rule Act and section 2-5 of the Optional Municipal Charter Law (N.J.S.A. 40:69A-30).
R.S. 40:48-2 reads:
"Any municipality may make, amend, repeal and enforce such other ordinances, regulations, rules and by-laws not contrary to the laws of this state or of the United States, as it may deem necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare of the municipality and its inhabitants, and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law."
It thus empowers any municipality to adopt such ordinances as it deems necessary and proper "for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare." The *200 tremendous sweep of this language is apparent. If the particular aspect of the police power of the State which sustains rent control statutes does not fall somewhere within the breadth of the quoted phrase, I would not know where else to place it. If the municipality lacks power to protect the public in a housing emergency, its want of power cannot be attributed to inadequacy of the language of the statute, but rather to some limitation arising from an overriding consideration.
The power of a municipality to adopt a rent control ordinance was denied in Ambassador East, Inc. v. City of Chicago, 399 Ill. 359, 77 N.E.2d 803 (Sup. Ct. 1948) and Tietjens v. City of St. Louis, 359 Mo. 439, 222 S.W.2d 70 (Sup. Ct. 1949). Both jurisdictions, however, adhere to the view that the general welfare clause of enabling statutes is not a source of additional power beyond that necessary to carry into effect powers specifically granted. See, generally, 37 Am. Jur., Municipal Corporations, sec. 283, p. 916.
That approach to municipal authority contrasts sharply with the view of our Supreme Court in Fred v. Mayor and Council of Borough of Old Tappan, 10 N.J. 515 (1952). There it was held that a municipality may regulate the removal of soil. The result was grounded squarely on the broad provisions of R.S. 40:48-2, as to which the court said (10 N.J., at page 520):
"* * * This interpretation of R.S. 40:48-2 as an express grant of general police powers to municipalities has been made impregnable by the continued legislative acquiescence therein, by the mandate of Article IV, Section VII, paragraph 11 of the Constitution of 1947 that acts concerning municipalities be liberally construed, and by the adherence thereto of the more recent judicial decisions, Ricca v. Board of Commissioners, 1 N.J. Super. 139, 142-143 (App. Div. 1948); Edwards v. Borough of Moonachie, 3 N.J. Super. 10, 14 (App. Div. 1949), reversed 3 N.J. 17 (1949); Michaels v. Mayor and Council of Township Committee of Tp. of Pemberton, 3 N.J. Super. 523, 527 (Law Div. 1949); City of Newark v. Charles Realty Co., 9 N.J. Super. 442, 457 (Cty. Ct. 1950). If more be needed, we refer to the recent decision in State v. Mundet Cork Corp., supra, 8 N.J. 359, 369 (1952), wherein we held that the enactment of an air pollution ordinance was `a function of the *201 police power conferred on municipalities by R.S. 40:48-2 (originally enacted in 1917) for the protection of the welfare of their residents.'
Plainly, therefore, R.S. 40:48-2 must be considered as an express grant of broad general police powers to municipalities. * * *"
As I read Stell v. Mayor and Aldermen of Jersey City, 95 N.J.L. 38 (Sup. Ct. 1920), it does not deny the power here asserted, but if it should be read otherwise, the decision is no longer authoritative.
A municipal rent control ordinance was sustained in Warren v. City of Philadelphia, 382 Pa. 380, 115 A.2d 218 (Sup. Ct. 1955), one basis of the holding being a statute authorizing legislation for the health and welfare of the citizens. In Heubeck v. Mayor and City Council of Baltimore, 205 Md. 203, 107 A.2d 99 (Ct. App. 1954) and F.T.B. Corporation v. Goodman, 300 N.Y. 140, 89 N.E.2d 865 (Ct. App. 1949), rent control ordinances were found invalid because of conflict with state law rather than because of lack of power in absence of such conflict, and will be considered further under "II" below in connection with the issue of conflict which plaintiffs here assert. Neither case is particularly helpful in the immediate inquiry as to the proper interpretation of R.S. 40:48-2.
The Optional Municipal Charter Law delegates broad powers. Section 2-4 thereof (N.J.S.A. 40:69A-29) provides that "Each municipality governed by an optional form of government pursuant to this act shall, subject to the provisions of this act or other general laws, have full power to * * * (b) adopt and enforce local police ordinances of all kinds." The term "general law" is defined in section 2-3 (N.J.S.A. 40:69A-28) to include any law, not inconsistent with that act, "heretofore or hereafter enacted which is by its terms applicable or available to all municipalities," and thereby the provisions of the Home Rule Act are made applicable. Additionally, section 2-5 (N.J.S.A. 40:69A-30) provides:
"The general grant of municipal power contained in this article is intended to confer the greatest power of local self-government consistent with the Constitution of this State. Any specific enumeration of municipal powers contained in this act or in any other general *202 law shall not be construed in any way to limit the general description of power contained in this article, and any such specifically enumerated municipal powers shall be construed as in addition and supplementary to the powers conferred in general terms by this article. All grants of municipal power to municipalities governed by an optional plan under this act, whether in the form of specific enumeration or general terms, shall be liberally construed, as required by the Constitution of this State, in favor of the municipality."
It is difficult to conceive of a broader grant of power.
Hence it must be concluded that the grants of power under the Home Rule Act and under the Optional Municipal Charter Law are each broad enough in terms to embrace the power here exerted by the municipality.
Plaintiffs rely heavily upon chapter 146 of the Laws of 1956 (N.J.S.A. 2A:42-56 et seq.), enacted after the ordinance was adopted, and maintain this statute (1) constitutes a legislative declaration that statutes referred to above do not authorize a rent control ordinance, and (2) precludes action under those statutes by any of the municipalities to which chapter 146 applies. I am aware of an attack upon chapter 146 in another proceeding, but since the parties here do not assail it, I assume its validity for the purpose of this motion.
Chapter 146 purports to be a special law enacted pursuant to Article IV, Section VII, paragraph 10, of the Constitution upon the petition of the City of Newark and some 30 other municipalities. It would authorize rent control by municipal action, subject however to limitations which the ordinance here involved does not meet.
The determination of the state of existing law, including the construction of existing statutes, is exclusively a judicial question, and hence a legislative finding with respect to it, although of course entitled to utmost consideration, could not constitutionally be conclusive. In any event, chapter 146 does not contain a trace of a legislative opinion upon the matter. Nor can a finding be culled from the circumstances surrounding its enactment. With the approach of the expiration on June 30, 1956 of the State Rent Control Act of 1953 (chapter 216 of the Laws of 1953; *203 N.J.S.A. 2A:42-14 et seq.), the question whether state rent control should be continued was widely debated. There were views pro and con as to whether municipalities had the power to fill the void if the State did not act. Extension of the state law not being forthcoming, advocates of control urged the adoption of a statute which would place the municipal power beyond debate and obviate this very litigation. Additionally, some felt that if municipalities should act, it would be well to have a review agency at county level, expeditious appeal from agency determinations to the county district court, and authority in the State Rent Control Director to transmit pertinent records to such municipalities as might act. Out of that setting emerged chapter 146.
Hence it is clear that chapter 146 cannot be deemed to be an expression as to the then state of municipal law. For like reasons, and as well the failure of the title to express the purpose and the disfavor with which claims of implied repealer are viewed, chapter 146 could not operate to repeal any portion of the general statutes discussed above.
But plaintiffs urge chapter 146 operates to prevent any municipality which petitioned for its adoption to deal with rent control except in accordance with its terms until the expiration date of chapter 146. Analytically this challenge relates to the issue of conflict discussed in "II" below, but it may conveniently be considered here. If chapter 146 were operative as to the City of Newark, the point would have much force. But the City of Newark has not adopted chapter 146 (counsel states the reason is the across-the-board increase which chapter 146 would require), and Article IV, Section VII, paragraph 10 of the Constitution under which it was enacted provides:
"* * * Such law shall become operative only if it is adopted by ordinance of the governing body of the municipality or county or by vote of the legally qualified voters thereof."
And section 18 of chapter 146 reads:
"This act shall take effect immediately but shall be inoperative in any municipality until it shall be adopted by ordinance of the governing body of such municipality * * *." *204 Accordingly, until local acceptance, chapter 146 can have "no force whatever for any purpose." Conklin v. Ronnie, 125 N.J.L. 208 (Sup. Ct. 1940), affirmed 126 N.J.L. 424 (E. & A. 1941); 82 C.J.S., Statutes, § 402, p. 970.

B.
It will be recalled that section 2-5 of the Optional Municipal Charter Law (N.J.S.A. 40:69A-30) confines the power granted to that which may be delegated within constitutional limits. Such limits, of course, apply as well to the Home Rule Act. Hence assuming, as I have concluded, that the cited provisions of the statutes by their terms embrace the power to enact the ordinance, the question arises whether such delegation offends the State Constitution.
Unquestionably there is a limit upon the authority of the Legislature to delegate legislative power to municipalities. If one reflects upon statutes grounded upon the police power dealing with property and determining rights and liabilities of one citizen as against another, he cannot but pause at the proposition that power may be delegated to municipalities to legislate in all areas. It is said the Legislature may delegate its police power to municipalities "in matters of local concern." 11 Am. Jur., Constitutional Law, sec. 256, p. 988; secs. 223 and 224, p. 934 et seq.; 16 C.J.S., Constitutional Law, § 140, p. 649. But what is a matter of "local concern"?
A municipality is the instrumentality of the State for the purpose of providing government. The State may delegate police power to enable municipalities to meet problems which may exist in some and be trivial or non-existent in others. The State may also delegate police power as to matters which are of statewide incidence where practical considerations warrant different or more detailed treatment locally to meet varying conditions or to achieve the ultimate goal more effectively. I do not think it necessary to ponder whether the precise line lies beyond these principles because it seems to me that the exercise of power here involved falls well within them.
*205 I agree with plaintiffs that traditional exercises of power should be consulted in the constitutional inquiry. But although tradition may be revealing as to the quality of the delegable police power, it may not confine the power to the precise instances in which it has heretofore been asserted. The history of the police power is a story of ever-increasing restraint upon property rights. With economic growth, industrial innovations, greater concentrations of population, phenomenal mobility, an exercise of property rights which at one time was innocuous may today menace the public welfare. The police power must include a vast reservoir if government is to be equal to the obligation to govern. Schmidt v. Board of Adjustment of City of Newark, 9 N.J. 405 (1952). The march of events has required new legislative expressions at state level. Local demands have kept pace. The delegable police power must be equal to the task of meeting them. Today many municipalities have populations exceeding those of some of the states. Manifestly, the delegable police power may not be said to be constitutionally fixed in terms of the problems of an ancient village.
Accordingly, it is observed in 6 McQuillin, Municipal Corporations (1949), sec. 24.13, p. 471:
"* * * Although in its early history police power was closely associated with the preservation of public peace, safety, morals and health, under modern conditions it includes the general welfare which embraces regulations to promote the economic welfare, public convenience and general prosperity of the community. This change in conception or at least in practice relative to the broad objects of the police power discloses its dynamic character and capacity for growth.
The United States Supreme Court has declared quite emphatically that `whatever is contrary to public policy or inimical to the public interests is subject to the police power of the state and within legislative control.' The police power is positive as well as negative in its object of promoting the greatest welfare of the state, and it is not to be confined narrowly within the field of public health, safety, morality or the suppression of that which is offensive. Accordingly, in recent years particularly, the police power has been constantly exercised by municipalities, not only to protect the peace, order, safety, health and morals of the community, but also to protect and promote the public welfare, which may embrace not merely physical and moral elements, but economic as well. * * *"
*206 In like vein 37 Am. Jur., Municipal Corporations, sec. 276, p. 899, reads:
"The police power of municipal corporations is a most important power,  in fact, one of the most essential,  largely coextensive with the necessities of the particular situation, and sufficiently broad, comprehensive, and elastic to meet changing social, economic, and political conditions. * * *"
And in gauging delegable police power we must be mindful of the decisive swing from the earlier rule of strict construction of authority granted to municipalities, accomplished in 1947 by the adoption of our present Constitution, for it evidences a larger view of permissible home rule.
The history of rent control demonstrates the local nature of the problem today. At the outset the evil was so widespread that it was met at federal level. As the problem receded or disappeared sectionally the Federal Government withdrew, leaving the problem exclusively to state solution. Thereupon state legislatures, especially in populous areas, undertook to deal with the problem, and in this state by legislation which permitted local decontrol as the local emergency disappeared. As of June 30, 1956, the expiration date of the state act, controls were operative in 54 municipalities. The problem thus became progressively more localized, and in that setting the State withdrew. I can think of no tenable line of constitutional demarcation which would bar the State from empowering a municipality to deal with an emergency thus singularly affecting it.
Although the ordinance may seem unusual, as ordinances go, in that it operates to affect or alter the rights of one citizen in his direct relations with another, yet if public necessity requires local legislative action, it is of no constitutional moment that the remedy takes the path of adjusting the property or contractual relations of its inhabitants inter se. There is ample precedent for delegation to municipalities of power the exercise of which restrains the rights of inhabitants with such immediate effect. A century ago it was here held that the Legislature may delegate to county government *207 the power to fix rates of ferriage. Chosen Freeholders of Hudson County v. State (New Jersey R. & Transp. Co., Pros.), 24 N.J.L. 718 (E. & A. 1853). In harmony with that holding it is stated in 6 McQuillin, Municipal Corporation (3rd ed. 1949), sec. 24.17, pp. 481-2:
"* * * It has been customary in England from time immemorial and in this country from its earliest colonial days to regulate ferries, common carriers, hackmen, bakers, millers, wharfingers, innkeepers, etc., and in so doing fix a maximum charge to be made for services rendered, accommodations furnished and articles sold. To this day statutes and ordinances on these subjects are found and are not within any constitutional prohibition."
See also 7 McQuillin, Municipal Corporations (3rd ed. 1949), sec. 24.670, p. 716; sec. 24.713, p. 770. It is appropriate to note that in declaring rent control statutes to be within the police power, the United States Supreme Court referred to control of rates chargeable by common carriers as evidence of the validity of such statutes. Block v. Hirsh, supra (256 U.S. 135, 157, 41 S.Ct. 458, 65 L.Ed. 865).
As stated above, New York held a local rent control law of the City of New York to be invalid because of conflict with provisions of state statutes dealing with eviction proceedings. Thereafter the Legislature validated the city's law, and as thus validated it was upheld, a holding which imports that police power may be delegated to deal with housing emergencies. Teeval Co., Inc., v. Stern, 301 N.Y. 346, 93 N.E.2d 884 (Ct. App. 1950). New York has also upheld a local law of the City of New York prohibiting black market operations in certain commodities. People v. Lewis, 295 N.Y. 42, 64 N.E.2d 702 (Ct. App. 1945).
And in City of Newark v. Charles Realty Company, 9 N.J. Super. 442 (Cty. Ct. 1950), ordinances which were part of a slum clearance program and which imposed upon the owner of leased property a duty to repair and paint were upheld notwithstanding that their effect was to impose upon a landlord an obligation not owed the tenant under decisional law relating to leases. That case was cited with approval by our Supreme Court in Fred v. Mayor and Council *208 of Borough of Old Tappan, supra (10 N.J. 515). See also Librizzi v. Plunkett, 126 N.J.L. 17 (Sup. Ct. 1940).
It therefore seems clear that principle and precedent amply sustain the authority of the State to delegate to municipalities the power here exercised.

II.
Plaintiffs next contend that assuming the delegable and delegated police power authorize the ordinance, yet the ordinance must fall because of conflict with state law. That an ordinance may not conflict with state law is thoroughly settled. Fred v. Mayor and Council of Borough of Old Tappan, supra (10 N.J. 515); Magnolia Development Co., Inc., v. Coles, 10 N.J. 223 (1952); Tagmire v. Atlantic City, 35 N.J. Super. 11 (App. Div. 1955); Pennsylvania Railroad Company v. Mayor and Aldermen of Jersey City, 84 N.J.L. 716 (E. & A. 1913); Hertz Washmobile System v. Village of South Orange, 41 N.J. Super. 110 (Law Div. 1956); 5 McQuillin, Municipal Corporations (3rd ed. 1949), secs. 15.20 to 15.22, pp. 96 to 106.
One alleged conflict may be quickly dissipated. It is urged the failure of the State to extend its rent control statute constitutes a determination that no emergency exists anywhere in the State. It is enough to say that a failure to legislate is not legislation, and to add that the enactment of chapter 146 of the Laws of 1956, discussed above, effectively dissolves the claim that the Legislature found there was no local emergency.
The more imposing proposition is that the ordinance conflicts with provisions of the District Court Act and of the Landlord and Tenant Act. Plaintiffs cite eminent authority in support. F.T.B. Corporation v. Goodman, supra (300 N.Y. 140, 89 N.E.2d 865); Heubeck v. Mayor and City Council of Baltimore, supra (205 Md. 203, 107 A.2d 99). In F.T.B. Corporation, a conflict was found between the provisions of the ordinance prohibiting evictions and the Civil Practice Act regulating summary proceedings to recover *209 possession, the court concluding the ordinance imposed "additional restrictions" upon the right to dispossess. In Heubeck a conflict was found between the provision of the ordinance prohibiting repossession after expiration of the term and a state law providing for eviction of tenants holding over if proper notice has been given, the court concluding the ordinance prohibits an action which the state law authorizes. In both cases the courts held the eviction provisions to be inseparable from the provisions for maximum rentals and hence adjudged the ordinances wholly invalid.
On the other hand, Pennsylvania rejected a claim of conflict in Warren v. City of Philadelphia, supra (382 Pa. 380, 115 A.2d 218), saying at page 221:
"Appellees further contend that the ordinance is invalid because it conflicts with The Landlord and Tenant Act of 1951, P.L. 69, 68 P.S. § 250.101. This Act sets up the procedure whereby a landlord may repossess premises if he has a right to evict the tenant. The substantive law as to when he has a right to evict is not touched upon. The Landlord and Tenant Act is not an exercise of police powers by the state, and hence is not in derogation of the police power of the city."
In dealing with the problem of conflict between an ordinance and state law, the circumstance that both in some way relate to the same general subject and stem from police power is not enough to establish fatal incompatibility. Rather it must appear that the State has ordained a policy with respect to a particular problem and that the ordinance pursues a policy inconsistent with it. The problem which here invited the exercise of police power is the threat to the public welfare consequent upon a housing shortage in emergent circumstances. The purpose is to tide the public over a temporary difficulty, and although the ordinance contains no time limitation, its effectiveness is nonetheless for the duration of the emergency. Chastleton Corporation v. Sinclair, supra (264 U.S. 543, 44 S.Ct. 405, 68 L.Ed. 841); Safeway Stores, Inc., v. Botti, 137 N.J.L. 437 (Sup. Ct. 1948). Let us examine the statutes relied upon to determine *210 whether the Legislature thereby pronounced a policy at war with the policy of the ordinance.
N.J.S. 2A:18-53, 60 and 61 deal with summary actions for recovery of demised premises in the county district court and removal thereof to the Superior Court. These sections do not create a right to possession but rather deal only with the remedy if the right otherwise exists. George Jonas Glass Co. v. Ross, 69 N.J.L. 157 (Sup. Ct. 1902); Manahan v. City of Englewood, 108 N.J.L. 249 (Sup. Ct. 1931). Hence legislation bearing upon or conditioning the right to evict in no way impinges upon the statute.
N.J.S. 2A:35-1 and 2 provide a person "claiming the right of possession of real property in the possession of another, or claiming title to such real property, shall be entitled to have his rights determined in an action in the superior court or in the county court of the county wherein the real property is located" and shall be entitled to recover incidental damages and the full value of use and occupation in any such action. The observations made with respect to the statutory provisions immediately above seem equally appropriate here.
Lastly, plaintiffs cite N.J.S. 2A:42-5, 6 and 7 of the Landlord and Tenant Act. Section 5 provides that a tenant who holds over after giving a notice of intention to quit shall pay double rent. Section 6 provides in essence that when a tenant for any term willfully holds over he shall pay at the rate of double the yearly value of the real estate so detained for so long a time as the same is detained. These sections are substantial counterparts of 4 Geo. II, c. 28, sec. 1, and 11 Geo. II, c. 19, sec. 18, Ancona Printing Co. v. Welsbach Co., 92 N.J.L. 204 (E. & A. 1918), are penal, and are strictly construed, Mason v. Haurand, 82 N.J.L. 645 (E. & A. 1912); 32 Am. Jur., Landlord and Tenant, sec. 932, p. 786. Section 7 provides that a landlord to whom a year's rent in arrear is due and who shall have the right to re-enter for non-payment, may without formal demand or re-entry institute an action for possession. The section was derived from 4 Geo. II, c. 28, sec. 2, which *211 eliminated some niceties of the common-law requirements. George Jonas Glass Co. v. Ross, supra (69 N.J.L. 157); 32 Am. Jur., Landlord and Tenant, sec. 1009, p. 846.
Reference is made to the ancient origin of these statutes to indicate their adoption was unrelated to housing emergencies. Rather their purpose was to remedy what might be called deficiencies in the common law's approach to the landlord-tenant relationship. These provisions of course can be said to establish a policy (which incidentally, I would suppose, could be varied by an express contractual stipulation denying the landlord the benefit thereof without thereby offending any public interest). And in literal terms it may be said the ordinance conflicts with them. But the conflict is between statutes of permanent operative effect unrelated to public emergency and an ordinance designed to protect the public from a temporary evil totally foreign to the genesis of those statutes. Thus there is no conflict in underlying policies. In terms of public concern, the subject matters are distinct; the public interest sought to be advanced by one is completely different from the public interest which prompted the other. The conflict which the law forbids is a repugnance in policies with respect to the treatment of a public problem, here a housing shortage; and as I have said, the statutes and ordinance, far from constituting incompatible approaches to a single evil, actually relate to totally different problems. Cf. Board of Health of Township of Weehawken in Hudson County v. New York Central Railroad Company, 4 N.J. 293 (1950).
Although the foregoing makes it unnecessary to consider whether the entire ordinance would fall if its provisions relating to eviction are invalid, yet under the circumstances I feel I should express my inability to adopt the view of F.T.B. Corporation and Heubeck in that eventuality. It is undoubtedly true that direct restraints upon eviction are an important technique in the overall plan of the ordinance. But control of maximum rents cannot be said to be so dependent upon or intertwined with control of evictions that the local legislative body intended both or none. Control of *212 maximum rents is itself conducive to the purpose of assuring continued occupancy of existing tenants, because if the landlord is restricted to the lawful rent, there is removed the inducement to dispossess. Thus, while direct control of evictions is an additional and more effective technique, yet control of maximum rents is itself an intelligent partial solution. It would be unreasonable to assume the municipality, if aware of its lack of power to control evictions directly, would do nothing at all to meet the emergency it found. Although express provisions for severance in the event of partial invalidity are sometimes not too helpful in resolving the issue, yet the declaration in section 16 that "The provisions of this ordinance are severable and if any provisions, sentence, clause, section or part thereof" (emphasis added) shall be invalid, the invalidity shall not infect the remainder, evidences a purpose to salvage any part which can be said to be a rational means to the object of the ordinance.

III.
Plaintiffs challenge the validity of the provisions delegating power to the commission created by the ordinance, urging (1) a municipality may not redelegate its legislative power without express statutory authority, and (2) the standards prescribed for the performance by the commission of its regulatory and judicial functions are not sufficient to satisfy the requirements of due process.

A.
It has been said that a municipality may not redelegate its legislative authority, at least in the absence of statutory warrant. 1 Cooley's Constitutional Limitations (8th ed. 1927), p. 434; 16 C.J.S., Constitutional Law, § 140, p. 651; 62 C.J.S., Municipal Corporations, § 154, p. 316; (State) Riley v. City of Trenton, 51 N.J.L. 498 (Sup. Ct. 1889); Harcourt v. Common Council of Asbury Park, 62 N.J.L. 158 (Sup. Ct. 1898); Schwartze v. City *213 of Camden, 77 N.J. Eq. 135 (Ch. 1910); Librizzi v. Plunkett, supra (126 N.J.L. 17). But although a regulation prescribing future conduct is legislative in quality, it does not follow that every delegation of authority to adopt such regulations falls within the prohibition against delegation of the legislative power. Rather, if the legislative body establishes the basic policies, it may commit to an administrative agency the authority to make rules and regulations to effectuate them. "The authority to make rules and regulations to carry out a policy declared by the lawmaker is administrative and not legislative." 42 Am. Jur., Public Administrative Law, sec. 37, p. 330; see also sec. 49, p. 353; sec. 53, p. 358 and 37 Am. Jur., Municipal Corporations, sec. 53, p. 668.
The distinction drawn in the quotation above may seem to be a play of words since what is thus denominated "administrative" is "legislative" in any realistic sense. Davis, Administrative Law (1951), sec. 10, p. 41. But it is realism which forbids a blanket prohibition against delegation or redelegation of the legislative power. With the increasing complexity of governmental activity, the capacity of legislative bodies to perform the full legislative role diminishes and often disappears. This is manifestly true at federal and state levels, but equally true at the municipal level. Legislative bodies cannot possibly keep in touch with and be in effective and efficient control of the legislative details required in a practical approach to all problems. Frequently, the most the legislative body can do is to provide a basic plan of the solution, leaving to others the task of preparing and revising the detailed drawings. Unless such delegation is permitted, legislative solutions would bog down. Davis, Administrative Law (1951), sec. 27, p. 86. In short, necessity requires and therefore justifies delegation and dictates what portion of the power must be exercised by the delegating authority itself. The answer in every case must be found in the common sense of the matter.
Hence it would be unreasonable to read into the Constitution a demand that all legislative details be authored *214 by the legislative body, state or municipal. And although unquestionably the Legislature may prohibit redelegation by a municipality or prescribe the basis for it, yet in the absence of such legislative expression or circumstances cogently evidencing an intent that the governing body shall itself exercise the total power delegated to it, it must be that local government has wide latitude to determine whether a proper exercise of a power granted to it is better served by committing legislative details to an agency which will be in immediate touch with the problem and its specific demands. The ordinance does not offend these principles.

B.
This brings us to the second phase of the challenge, to wit, that the standards are constitutionally inadequate. The provisions of the ordinance in the main are patterned after the provisions of the state rent control statute in its delegation of power to the State Rent Control Director, and the decisions sustaining their sufficiency seem to me to be decisive here, Jamouneau v. Harner, supra (16 N.J. 500); Stuyvesant Town, Inc., v. Ligham, supra (17 N.J. 473), especially so in the light of the rule of reasonableness which confines the exercise of municipal power and the judicial superintendence thereof.

IV.
Finally, it is charged that constitutional infirmity stems from the circumstance that the City of Newark controls rents and evictions, whereas neighboring municipalities do not. It is argued that inequality results with violence to the demand of equal protection of the law. It is further urged that the Legislature may not authorize a municipality to do what the Legislature cannot do, and since, it is said, the Legislature could not itself adopt a statute thus applicable only to real property in the City of Newark because of the ban against special legislation in Article IV, Section VII, *215 paragraph 9 of our Constitution, it must follow that the ordinance is prohibited by that provision.
In ultimate effect, these challenges amount to a claim that the Legislature cannot delegate police power to municipalities. If the dictates of equal protection and the prohibition against special legislation had the impact which plaintiffs suggest, it is difficult to understand how there could be any such institution as local government. The essence of local government is government on a local basis. It is too late to suggest that the delegation of police power to municipalities must be accompanied by statutory standards for its exercise, Board of Health of Township of Weehawken in Hudson County v. New York Central Railroad Company, supra (4 N.J. 293), or that the enabling statute must compel all municipalities to exercise the authority granted to them. If police power may thus be delegated to municipalities, it follows inevitably that municipal legislation will be far from uniform throughout the state. And the action or inaction of one municipality cannot dictate the course to be pursued by another. Amodio v. Board of Commissioners of Town of West New York, 133 N.J.L. 220, 225 (Sup. Ct. 1945); Hertz Washmobile System v. Village of South Orange, supra (41 N.J. Super., at page 110).
The motion for summary judgment is accordingly denied. Present order on notice or with consent as to form affixed.